FAJARDO, PETICIONARIO *v.* SOTO NUSSA, JUEZ DE DISTRITO ET AL., DEMANDADOS.

SOLICITUD para que se expida mandamiento de *certiorari* a los jueces de las Cortes de Distrito de Aguadilla y San Juan, Sección 2ª., en causas por soborno.

No. 148.—Resuelto en julio 28, 1915.

TRASLADO DE CAUSAS—FACULTADES DEL LEGISLADOR—JUICIO POR JURADO—LEY COMÚN.—La legislatura de Puerto Rico al permitir un traslado del lugar del juicio en causas criminales no se ha excedido en su facultad o ejercitado una gran violencia entre el moderno juicio por jurado de la ley común, ya como esta existía en la fecha de la legislación en cuestión, o como se encontraba cuando fué introducida en América por las Colonias Británicas.

ID.—JUICIO JUSTO E IMPARCIAL—JURADO.—Cuando se pretende obtener el traslado del lugar del juicio por el fundamento de que un juicio justo e imparcial no puede ser obtenido en otra forma, no es un requisito previo indispensable el tratar de obtener un jurado.

ID.—AFFIDAVITS EN APOYO DE LA MOCIÓN—COMPARECENCIA DE LOS DEPONENTES.—De acuerdo con el precepto del estatuto relativo a la admisión de pruebas cuando se presentan *affidavits* en apoyo de una moción de traslado, la corte puede, ya a iniciativa propia o a moción del acusado, hacer comparecer a los deponentes para examinarlos con respecto a su verdadero conocimiento de las cuestiones acerca de las cuales declararon o para ser repreguntados sobre el particular.

ID.—SEGUNDO TRASLADO DEL JUICIO—DISTRITO MÁS CERCANO AL EN QUE SE ORIGINÓ EL CASO.—Tanto el espíritu de la ley (art. 173 del Código de Enjuiciamiento Criminal) como los principios fundamentales en que descansan sus preceptos saludables en la forma enmendada en 1904, exigen que cualquiera corte de distrito que conceda un segundo traslado del lugar del juicio deberá ordenar que el caso sea enviado al distrito que tenga su sala de justicia más cercana, y de más fácil acceso al distrito en que se originó, a menos que se demuestre que a tal distrito se puede hacer alguna objeción, debiendo guiarse en todo caso por el mismo principio al elegir cualquier otro distrito y dando siempre preferencia entre dos o mas lugares que puedan ser igualmente elegibles para el juicio al más cercano al distrito de jurisdicción original.

ID.—NUEVO JUICIO—REGLAS SOBRE MOCIONES DE NUEVO JUICIO.—Las reglas que regulan las mociones de nuevo juicio fundadas por ejemplo en pruebas nuevamente descubiertas, son aplicables por analogía y con igual fuerza a las mociones sobre traslado del lugar del juicio.

Los hechos están expresados en la opinión.

Abogado del peticionario: *Sr. Willis Sweet.*

Abogados de los demandados: *Sres. Howard L. Kern, Attorney General de Puerto Rico, R. W. Perkins, Jr., Attorney General Auxiliar y Jaime Sifre, Jr., Fiscal Especial de la Isla.*

EL JUEZ ASOCIADO SR. HUTCHISON emitió la opinión del tribunal.

Los hechos de este caso aparecen clara y concisamente expresados en el alegato que ha sido presentado por los abogados del demandado, los cuales son como sigue:

"Estas causas tuvieron por origen tres acusaciones de soborno que fueron formuladas por El Pueblo de Puerto Rico contra Mateo Fajardo Cardona, en la Corte de Distrito de Mayagüez. Antes de entrar en juicio en virtud de estas acusaciones, el ministerio público solicitó que las causas fueran trasladadas a cualquiera otro distrito judicial, por la razón de que El Pueblo de Puerto Rico no podía obtener un juicio justo e imparcial en Mayagüez. Para probar este hecho se presentaron declaraciones juradas, y después de la debida argumentación de la moción, la corte decretó el traslado de las causas al distrito de Aguadilla. De acuerdo con esta orden el secretario de la Corte de Mayagüez remitió a la Corte de Aguadilla, una copia certificada de los récords de estas causas tal como habían ocurrido en Mayagüez.

"Antes del juicio en Aguadilla el ministerio público presentó otra moción solicitando que las causas fueran trasladadas a cualquier otro distrito, por la razón de que El Pueblo de Puerto Rico no podía obtener un juicio justo e imparcial en Aguadilla. En esta moción, no obstante, se solicitaba que si la resolución era favorable, la orden decretando el traslado no debía ordenar la remisión de las causas al distrito de Arecibo, puesto que un estado de cosas análogo al de Mayagüez y Aguadilla impediría que se celebrase un juicio justo e imparcial para El Pueblo en dicho distrito. Se presentaron declaraciones juradas para sostener esta moción y se argumentó sobre esto. Después de la debida consideración la Corte de Aguadilla dictó una orden considerando la moción y decretando que las causas fuesen trasladadas a la Corte de Distrito de San Juan. Se señaló la vista de estas causas en San Juan para el 28 de junio y se citaron los testigos. Mientras tanto, no obstante, con posterioridad al traslado de las causas desde Aguadilla a San Juan y la fecha que se fijó para el juicio en San Juan, la Corte Suprema expidió un auto de *certiorari* dirigido al Hon. Juez de la Corte de Distrito de Aguadilla, ordenándole que remitiese a dicho tribunal el récord original en las causas

contra Mateo Fajardo Cardona. Además, el día 26 de junio, de acuerdo con una enmienda en la solicitud para que se expidiese el auto, se expidió un auto de *certiorari* análogo dirigido al Hon. Juez de la Corte de Distrito de San Juan, Sección 2ª., ordenándole que remitiera los autos originales en las causas contra Mateo Fajardo Cardona. De acuerdo con estas órdenes, se suspendió el juicio y el auto fué cumplido por los respectivos jueces, elevando a esta corte el récord de los procedimientos en estas causas hasta la fecha.''

El peticionario sugiere la siguiente reseña de las cuestiones de derecho presentadas por él:

''Las cuestiones de derecho comprendidas en este caso son actualmente como sigue:

''La sección 8 de la Ley de Enjuiciamiento Criminal dispone que todos los delitos deben ser juzgados en el distrito en que se haya cometido la ofensa.

''*a.* La sección 171 del mismo código dispone que las causas criminales pueden ser trasladadas a solicitud del fiscal del distrito.

''Lo que se efectuará; y esto envuelve:

''*b.* La facultad de una legislatura territorial para promulgar una disposición de ley directamente en contraposición con la Constitución de los Estados Unidos.

''*c.* Si habiéndole conferido autoridad a la Legislatura de Puerto Rico, para legislar libremente, siempre que no promulgase leyes contrarias a las leyes de los Estados Unidos, la legislatura local no se ha excedido en sus facultades constitucionales al legislar en materia de juicios por jurado, en cuanto que haya conferido al Fiscal de distrito la facultad de obtener un traslado al solicitarlo o acordar el que se le conceda tal traslado sobre su solicitud.

''*d.* Si la corte tiene facultad para decretar una orden de traslado sin requerir previamente al menos un esfuerzo para obtener un jurado.

''*c.* Si la corte, supuesto que esté autorizada para acordar un traslado puede elegir no solamente el distrito en que se ha de celebrar la vista, sino también el juez que ha de conocer de la causa.

''*f.* Si, en arreglo a la ley que regula el juicio por jurado, el juez en un Territorio de los Estados Unidos, en lo que tal cuerpo político se diferencia de un Estado de la Unión, puede decretar el traslado de una causa criminal fuera del distrito en que se cometió la ofensa que se alega, excepto al mostrarse causa fundada en repre-

sentación e interés del acusado, con arreglo a los más antiguos preceptos de dicha ley.''

No es preciso discutir en todos sus detalles las subdivisiones ''b'', ''c'' y ''f''. Si bien la proposición que de tal modo ha sido expresada presenta un campo fecundo tanto para hacer una investigación histórica como legal, el peticionario está satisfecho con citar el caso de *People* v. *Powell,* 87 Cal, 348, y el de *Hyde* v. *United States,* 225 U. S., 347.

Si se puede confiar en el sumario como guía, se ve que las únicas cuestiones que han sido consideradas en el último caso citado que pueden tener alguna relación con cualquier cuestión que esté comprendida en este caso son las siguientes:

''Puede haber una presencia sobreentendida en un Estado, distinta de la presencia personal por virtud de la cual un delito cometido en otro Estado puede ser consumado y hacer que la persona que lo lleva a cabo sea castigada en aquel lugar.

''Al interpretar las leyes criminales las cortes no deben mostrar una solicitud demasiado grande hacia el acusado que le dé inmunidad por la dificultad que hay para declararlo culpable o descubrir su delito.

''Al determinarse el lugar del juicio no se comete opresión alguna porque se lleve a los conspiradores al lugar en que el acto ilegal fué cometido en vez de obligar a los perjudicados y a los testigos a ir al sitio en que se formó la conspiración.

''La extensión de nuestro país no ha llegado a ser demasiado grande para la eficaz administración de la justicia criminal.

''Cuando se comete un delito continuado en más de un distrito, la enmienda Sexta no impide la celebración de un juicio en cualquiera de dichos distritos. *Armour Packing Co.* v. *United States,* 209 U. S., 56.

''Los actos manifiestos ejecutados en un distrito por una de las partes que habían conspirado en otro distrito en violación de la sección 5440 de los Estatutos Revisados, confieren jurisdicción a la corte del distrito en que se ejecutan los actos manifiestos en lo que respecta a todos los conspiradores. *Brown* v. *Elliot,* p. 392, post.''

*Hide* v. *United States,* 225 U. S. 347.

La opinión del tribunal emitida por el juez Sr. McKenna sugiere además que debemos ''ajustar las leyes y su aplicación

a los actos de los hombres y no dejarnos llevar por la mera 'teoría de los libros'." Y de nuevo al referirse a la "inmunidad contra el castigo" que podría resultar "si fuera adoptada la regla que ha sido alegada" se dice "que la posibilidad de tal resultado rechaza la alegación y demuestra que someternos a ella sería aplicar demasiado las reglas técnicas y el rigor del razonamiento en la administración práctica de la justicia criminal." Aun en la opinión disidente del juez Sr. Holmes hallamos la admisión de que "es una de las desgracias de la ley que las ideas lleguen a encerrarse en frases, y luego por mucho tiempo dejen de provocar más análisis." Tales frases no son sino indicios para mostrar la corriente general e irresistible de la opinión judicial moderna hacia la práctica administración de la justicia sustancial sin tener en cuenta los obstáculos técnicos, así en casos criminales como civiles.

Refiriéndose únicamente al otro caso que ha sido alegado dice el abogado: "No es posible dar nuevas razones, o robustecer la lógica del argumento que presenta el caso del *Estado* v. *Powell,* en contra de la proposición de que se conceda un traslado en casos criminales." Sin embargo, la corte que se hizo famosa por su decisión en aquel caso no ha estado aparentemente conforme en guiarse ya por las "razones o la lógica" del mismo. *People* v. *Prather,* 134 Cal., 386. El caso de Michigan en el que tanto se ha fundado el de *State* v. *Powell* no sostiene enteramente las conclusiones derivadas del mismo, como se ve de las mismas palabras citadas en el caso de Powell y como claramente indica la corte de Michigan en los casos subsiguientes de *People* v. *Peterson,* 52 N. W., 1039, y *People* v. *Fuhrman,* 61 N. W., 865; o en todo caso, y aun admitiendo que hay motivo para que exista diferencia de opinion en cuanto a este particular, entonces el caso de Kimball en tanto en cuanto sostiene la infortunada doctrina enunciada por la corte de California ha sido completamente desechado por las dos decisiones subsiguientes de referencia.

La crítica adversa que ha motivado en otras jurisdicciones la doctrina enunciada en el caso de *State* v. *Powell* aparece en los casos de *Barry* v. *Truax,* 65 L. R. A., 762; *State* v. *Durflinger,* 76 N. E., 291, y en el de *State* v. *Holloway,* 146 Pac., 1071. Véanse también *Zinn* v. *District Court,* 114 N. W., 472; *Hewitt* v. *State,* 30 Southern, 795; *Commonwealth* v. *Davidson,* 15 S. W., 53, y *State* v. *Lewis,* 7 L. R. A., nueva serie, 669, y nota. Pero no es necesario que consideremos extensamente los casos que se fundan en los preceptos prohibitivos específicos de las diferentes Constituciones de Estados a falta de alguna limitación específica análoga respecto de las facultades de la Legislatura Insular.

Y puesto que el peticionario no ha tratado de armonizar o distinguir los casos de *Gromer* v. *Standard Dredging Co.* 224 U. S., 362-370; *Kent* v. *People of Porto Rico,* 207 U. S., 113; *Ponce* v. *Roman Catholic Church,* 210 U. S., 296; *Hawaii* v. *Mankinchi,* 190 U. S., 197; *Maxwell* v. *Dow,* 176 U. S., 581; *Dorr* v. *United States,* 195 U. S., 138; *Dowdell* v. *United States,* 221 U. S., 325 y *Díaz* v. *United States,* 223 U. S., 442, todos los cuales han sido citados y discutidos en el alegato presentado por el abogado de los demandados, no es preciso que tratemos de hacer un análixis acabado de dichos casos, ni de determinar con absoluta precisión hasta que punto puede ser aplicada la doctrina en ellos enunciada para regular este caso.

Debemos, sinembargo, observar de paso la siguiente indicación contenida en el alegato del peticionario.

''Aparecería quizás un tanto forzado el comparar el traslado de George Wáshington a Inglaterra o de Simón Bolívar a España para ser juzgado en las respectivas metrópolis cuando estos héroes se rebelaron contra su rey y que se fijó un precio sobre sus cabezas, al traslado de Mateo Fajardo de su distrito al de San Juan, para ser juzgado aquí. Pero el principio es el mismo, si hemos de confesarlo; aun a nuestro pesar, hay que convenir que en cuanto a los hechos no hay tampoco gran diferencia sustancial.''

· Tal vez no existe diferencia en el fondo en el principio fundamental que está envuelto en uno u otro caso, pero de ello no se deduce necesariamente que tal principio sea de importancia igualmente vital, o que deba ser ciegamente observado y extrictamente seguido en su pureza y vigor original en todas las circunstancias y en toda jurisdicción en que se observe, sin tener en cuenta el sentido común, grado de desarrollo cívico, condición política, intención legislativa, o las condiciones físicas geográficas. Notamos, por ejemplo, en la opinión disidente emitida en el caso de *Hyde* v. *United States,* en la cual insiste fuertemente el peticionario, la siguiente indicación respecto a la influencia de la extensión territorial: (La bastardilla es nuestra).

"Claramente que el uso de esta ficción o forma de palabras no debe impulsarse a tal punto en la administración de la ley nacional que traspase el precepto de la Constitución relativo a que el juicio de las causas criminales tendrá lugar en el Estado y distrito en que los delitos hayan sido cometidos. Art. III, párrafo 2, Cl. 3. Enmiendas, Art. VI. *Con la extensión del país de uno a otro océano este requisito es todavía de más importancia ahora que lo que fué hace cien años,* y debe hacerse cumplir en su letra y espíritu si vamos a hacer que los inconvenientes imposibles se conviertan en graves daños. En el caso de conspiración el daño se revela de modo conspicuo. Todo acto ilegal ejecutado en ayuda de la misma desde luego que se atribuye a los conspiradores, y si eso quiere decir que la conspiración se manifiesta como tal donde quiera que se ejecuta un acto ilegal podría quedar a elección del gobierno el acusar *en cualquiera de veinte Estados* en ninguno de los cuales habían estado los conspiradores. Y como donde quiera que dos o más se hayan reunido para la comisión de un delito hay una conspiración, la oportunidad para opresión *que así se presente* es en verdad *muy grande.* Y todavía es mayor si se resolviera que el éxito del mismo no esfume (*merge*) la conspiración en el delito que se quiso realizar y que se llevó a cabo Creo que no es necesario tratar de opresiones que entiendo han sido puestas en práctica o sobre la historia constitucional tan notablemente presentada por el Sr. Worthington, para demostrar que este es uno de los males que nuestros antepasados quisieron evitar."

Este razonamiento es adelantado y contestado en la opinión de la mayoría en la forma siguiente: (La bastardilla es nuestra).

"Nos damos cuenta de la fuerza del temor de que el extender la jurisdicción en casos de conspiración atendiendo a los actos manifiestos puede conferir al gobierno un poder del cual puede abusarse, y no deseamos dejar de tener presente tal posibilidad. Pero hay consideraciones en sentido contrario. No es una opresión en la ley aceptar el lugar en que se pretende ejecutar un acto manifiesto como el sitio en que debe ser castigado y sacar mas bien a los conspiradores de sus hogares que a las víctimas y testigos de la conspiración de los suyos. No debemos, mostrando una solicitud demasiado grande hacía el criminal, darle cierta clase de inmunidad contra el castigo por la dificultad que hay para declararlo culpable o descubrir su delito. Y esto puede resultar de adoptarse la regla que ha sido alegada. Déjesele encontrar con sus amigos en secreto y él tratará de hacerlo; déjese oculto el lugar en lo que pueda ser, y él y ellos pueden cometer su delito en *cualquier Estado de la Unión y eludir el castigo en todos.* Y las suposiciones no son caprichosas como se explican en un caso que fué sometido junto con este. *Brown v. Elliott, post,* p. 392. *La posibilidad de tal resultado* repele la alegación, y demuestra que someternos a ella sería aplicar demasiado las reglas técnicas y el rigor del razonamiento en la administración práctica de la justicia criminal. No vemos razón por la cual no pueda fijarse una presencia sobreentendida a los conspiradores, lo mismo que a los otros criminales; y ciertamente que no podemos estar conformes con la proposición de que no es adecuado que el Congreso defina qué es lo que constituye el delito de conspiración, o cuándo habrá de considerarse completa y hacer con él lo mismo que con otros delitos que se comiezan en un sitio y continúan en otro. Ni creemos tampoco que *la extensión de nuestro país ha llegado a ser demasiado grande para la administración eficaz de la justicia criminal.*"

De igual manera el juez Brown, al disentir en el caso de State v. Lewis, supra, dice lo siguiente: (La bastardilla es nuestra.)

"Estoy de acuerdo con toda aquella parte de la opinión en que se sostiene el poder de la asamblea general para prescribir generalmente lo relativo al traslado de causas criminales a *un condado contiguo* antes de presentarse la acusación o después de presentada. No

conozco ningún precepto de nuestra Constitución Federal o de Estado
que lo prohiba.  Suponiendo que los jurados deben ser citados de
la 'vecindad,' como en la ley común, creo que *un condado contiguo*
*podría estar considerado como comprendido en la vecindad,* pues eso
es lo que significa el término aunque en Inglaterra donde los conda-
dos son muy grandes se ha resuelto que es un jurado del condado.
Vacilaría en opinar que la legislatura tiene poder para decretar que
una persona que comete un delito en *Cherockee* puede ser acusado y
juzgado en *Currituck.*''

Con este criterio acerca de la cuestión si tuviéramos que
hacer una verdadera distinción respecto a los hechos,
diríamos que es muy grande la distancia que separa el caso
de Washington y de Bolívar del caso del peticionario, quien
aparte de toda cuestión de época o civilización no está ame-
nazado con ser llevado más allá de los mares, lejos de sus
amigos, hogar y país natal, y que está protegido por la natu-
raleza misma de la posibilidad de ser impulsado muy lejos
en cualquier dirección dentro de los confines de esta isla,
que en sí es una ''estrecha faja de tierra circundada por el
mar,'' la más pequeña de las Grandes Antillas y poco más que
una 'vecindad,' (visne or vicinage).

No creemos que la legislatura al permitir un traslado
del lugar del juicio en los casos criminales se excediera en sus
facultades, o ejerciera una gran violencia en el moderno juicio
por jurado de la ley común, ya como éste existía en la fecha
de la legislación en cuestión, o como se encontraba cuando
fué introducido en América por las Colonias Británicas.

Los casos citados por el abogado del demandado, a saber,
los de *Randle* v. *State,* 28 S. W., 953; *People* v. *Georger,* 95
N. Y. Supp., 790; *People* v. *Diamond,* 72 N. Y. Supp., 179;
*People* v. *McLaughlin,* 150 N. Y., 365, ninguno de los cuales
parece estar en conflicto con el de *People* v. *Powell, supra,*
indican que cuando se pretende obtener el traslado del lugar
del juicio por el fundamento de que un juicio razonable e im-
parcial no puede ser obtenido en otra forma, no es un requi-
sito previo indispensable el tratar de obtener un jurado.   El

peticionario no cita ninguna autoridad en contrario y en vista de estas circunstancias y sin hacer en este momento ninguna investigación independiente, sostenemos que de acuerdo con nuestro estatuto y los hechos de este caso no se exige tal tentativa previa.

Puesto que el peticionario no ha sugerido ninguna razón por la cual la corte de Aguadilla si tenía jurisdicción para ordenar el traslado a San Juan no podía también designar la sección de la Corte de Distrito de San Juan a la que debían de ser enviados los autos, ni indicó tampoco en qué forma, o por quién podría ser resuelta debidamente esta cuestión si no se resolvía por la corte *a quo,* nos abstenemos de hacer una seria consideración acerca del particular que de tal modo ha sido presentado.

Bajo el título de "otros puntos envueltos," el peticionario levanta dos cuestiones de procedimiento muy interesantes e importantes, a saber:

"Pero hay otros puntos envueltos. La cuestión de la suficiencia de los motivos alegados en que se basa la solicitud de traslado, suponiendo que la corte resolviese que tiene facultad para acordar el traslado; el derecho de la corte para ordenar el traslado a San Juan, como se ha solicitado, lo que envolvería desconocimiento del precepto legal, el que requiere que el caso sea trasladado de esta corte a Ponce, como el próximo distrito inmediato a Mayagüez después de Aguadilla.

" (1) El motivo en que se funda la solicitud de traslado, no puede decirse que tenga peso alguno en derecho. Y esto sea dicho sin que se entienda como una censura para el Fiscal. Pero es evidente que sin que se pruebe (*test*) y en forma legal, si es posible formar un jurado, o tener un juicio imparcial, la corte no puede anticipar el resultado.

"Hay un hecho que es tan conocido de la corte, como cualquier otra circunstancia de la vida, y es el poco o ningún valor que puede darse a los *affidavits* o declaraciones juradas obtenidas aquí y allá por los funcionarios del Gobierno, y que no siendo otra cosa que manifestaciones de referencia, *concebidas en términos generales,* pueden conseguirse en cualquier cuantía y sobre cualquier tema en todos los tiempos. *No es esa la forma legal de probar* (test) *una cuestión legal de cualquier carácter que sea.*

"En el caso citado de California se discute la suficiencia del '*showing*' o comprobación que se requiere.

"No podemos citar autoridades para probar una negativa. Baste decir que jamás se intentó un traslado basado en semejante justificación. No puede darse precedentes, porque no hay precedentes de semejante esfuerzo en materia de traslado.

"(2) El traslado de Mayagüez a Aguadilla fué acordado con arreglo a derecho, en lo que se refiere a la elección del distrito correspondiente; es decir, que de tener la corte de Mayagüez la facultad de acordar el traslado (facultad de la cual nosotros alegamos carecía dicha corte) el traslado se hizo al *forum* correspondiente. Y esto es así, porque la ley está inspirada en el antiguo derecho del acusado de ser juzgado en su vecindad, y nunca tan lejos de ella como pudiera llevarlo el ministerio. Por lo tanto, si esta corte resolviera declarando tener facultad para acordar el traslado, y que se ha ofrecido suficiente justificación para acordarlo, entonces el tribunal debiera seguir la antigua práctica, basada sobre el derecho antiguo en cuanto al punto, y trasladar el caso a Ponce, al distrito próximo inmediato. ¿Hasta dónde, pues, la práctica puede justificar, recomendar y reclamar la acción si es que la corte se cree autorizada para trasladar el caso, hasta qué punto nuestra súplica de que el mismo sea trasladado a Ponce debe apelar con inusitada fuerza a la justicia de esta Hon. Corte?  *  *  *.'"

No consta que la primera de las dos cuestiones así planteadas, en lo que respecta al elemento de procedimiento envuelto, que es el único elemento con el cual tenemos que ver, hubiera sido presentada entera y completamente a la corte de distrito; y por tanto preferimos dejar la cuestión sin discutir. Debemos llamar la atención, sin embargo, al precepto del estatuto relativo a la admisión de pruebas y en vista del tenor y efecto general de los *affidavits* que aquí han sido alegados, nos permitimos hacer la observación de que por lo menos muy bien pudo la corte haber llamado a los deponentes, ya por su propia iniciativa para examinarlos respecto a su verdadero conocimiento de las cuestiones acerca de las cuales declararon en el *affidavit,* o a moción del acusado para ser repreguntados sobre el particular.

Pasando a la segunda de estas dos cuestiones, encontramos que el abogado de los demandados al discutir la proposición de que "las cuestiones que se relacionan con la suficiencia de la prueba para demostrar la necesidad de los traslados no han sido planteadas ante esta corte para su revisión en este procedimiento," prescinde de la cuestion y hace solamente una simple referencia en la forma siguiente: "Y es por este principio que la resolución de la Corte de Aguadilla trasladando la causa a San Juan y no a otro distrito constituye un ejercicio de discreción que no puede atacarse ahora."

No podemos estar de acuerdo con el criterio que así ha sido sugerido, ni prestar nuestro consentimiento a una resolución tan sumaria de lo que a nuestro juicio ha venido a ser finalmente la cuestión esencial de este caso. Considerando ahora los autos de los procedimientos ante la Corte de Aguadilla encontramos en ellos un alegato escrito de seis páginas presentado por el abogado del gobierno sobre esta cuestión, y entre otras citas se hace la siguiente de Bishop sobre procedimiento Criminal, tomo 1, página 53: "En algunos de los Estados el lugar del juicio solamente puede ser cambiado una sola vez de acuerdo con el estatuto; en otros Estados no existe dicha limitación."

La cuestión ha sido expresada de modo enteramente distinto en el tomo 12 de Cyc. página 250, a saber: "El estatuto a menudo prohibe que se cambie el lugar del juicio más de una vez, y por lo general cuando el estatuto nada prescribe respecto a un segundo traslado, se entenderá que se prohibe que pueda hacerse más de un traslado."

Es cierto que el artículo 171 de nuestros estatutos dispone el traslado de una causa criminal por "la corte de distrito donde se halla pendiente"; pero este lenguaje está sujeto a interpretación a la luz de su contexto. El artículo 173 habla de objeciones al distrito contiguo "suficiente para haber autorizado el traslado de dicho distrito si el caso se *originó allí.*" Y el artículo 176 determina expresamente que "el tri-

bunal a que se traslada la causa *deberá proceder a la sustan-ciación y sentencia de la misma como si se hubiere iniciado en dicho tribunal."* También prescribe que si fuere necesario traer a la vista las alegaciones *originales* u otros documentos ante dicho tribunal, deberá el tribunal de *donde proceda la causa* disponer la trasmisión de los mismos, y resulta completamente claro que en el caso de un segundo traslado, este precepto no sería de aplicación a la corte que verifica el traslado.

Además, es asimismo claro que la ley de 1902 era mucho más amplia y más comprensiva en sus términos que la ley actual, en cuya ley de 1902 se deja la cuestión de procedimiento, tanto en lo que respecta a la comprobación que ha de hacer el peticionario como el distrito a que debe enviarse el caso, completamente a la discreción de la corte de distrito; y si la enmienda de 1904 significa algo en absoluto, ella envuelve ciertas limitaciones y restricciones a la discreción de la corte que no fueron expresadas en la ley anterior, o por lo menos tiende a regular o dirigir en cierto modo la forma en que ha de ser ejercitada dicha discreción. Así pues, el artículo 173 tal como fué aprobado en 1902, prescribía simplemente que: *"Si el tribunal se convenciere de que eran ciertas las manifestaciones del solicitante,* deberá dictar una orden trasladando la causa a tribunal competente de *algún distrito* donde no existiere el inconveniente indicado." Según fué enmendado en 1904, ha quedado redactado ahora como sigue: (La bastardilla es nuestra.)

"Cuando se presente una solicitud bajo cualquiera de las prescripciones de los dos artículos precedentes, el tribunal *oirá las pruebas* y si las alegaciones de la solicitud se justificaren, el tribunal de distrito o municipal en su caso, dictará una orden trasladando la causa para juicio *al distrito contiguo que tenga su sala de justicia más cercana y de más fácil acceso, a menos que se demuestre* a satisfacción del tribunal que *a tal distrito se puede hacer alguna objeción para admitirse el traslado de la causa por haberse iniciado en aquel distrito, en cuyo caso* se ordenará el traslado de la causa al distrito que el tribunal designare."

Atendidas estas circunstancias, podría decirse con cierto grado de certeza, que tal como está hoy la ley no tiene por objeto prescribir un segundo traslado del lugar del juicio y que la Corte de Distrito de Aguadilla carecía enteramente de jurisdicción para ordenar el traslado impugnado en este caso. Sin embargo, simplemente sugerimos este aspecto de la cuestión aunque sin resolverla en este sentido. Claramente que tal doctrina por sana que sea en principio en ciertas condiciones imaginables podría resultar en un verdadero inconveniente para el acusado; y de acuerdo con los términos del estatuto no podríamos, si quisiéramos, establecer una regla para el acusado y otra para el Estado. *Ubi lex non distinguit, nec nos distinguere debemus.* Y podemos añadir que es una regla mala la que es buena para uno y mala para otro.

"Las cortes no pueden ser demasiado cuidadosas especialmente en los juicios de los delitos más graves, concediendo a los acusados todos sus derechos y restringiendo al gobierno dentro de las limitaciones prescritas en la ley. El Estado con su sabiduría y humanidad ha puesto restricciones que sirven de protección en los juicios de sus ciudadanos y les ha garantizado el goce de ciertos derechos y privilegios, aun cuando se encuentren bajo el peso de graves acusaciones por infracción de sus leyes. Y al comparecer ante sus mismas cortes por medio de su representante legal y solicitar la privación de la vida o libertad del ciudadano, no tiene derecho a más favor o consideración que la que tiene el más humilde ciudadano del país. Tal es su propia ley y no la cambiaría si pudiera. *Rothschild* v. *The State,* 7 Texas Court of Appeals Reports, 540."

Creemos, sin embargo, que es una cuestión demasiado clara para ser discutida, que tanto el espíritu de la ley como los principios fundamentales en que descansan sus preceptos saludables en su forma enmendada exigen que cualquier corte de distrito que conceda un segundo traslado del lugar del juicio, deberá ordenar que el caso sea enviado al distrito que tenga su sala de justicia más cercana y de más fácil acceso al distrito en que se originó, a menos que se demuestre que a tal distrito se puede hacer alguna objeción; y debe guiarse en

todo caso por el mismo principio al elegir cualquier otro distrito, dando siempre preferencia, entre dos o más lugares que puedan ser igualmente elegibles para el juicio, al más cercano al distrito de jurisdicción original.

Creemos también que no deben estimularse las solicitudes para tales cambios subsiguientes, y en este caso concreto que el peticionario no debió haber alegado meramente que las condiciones que se decía existían en Aguadilla y Arecibo eran desconocidas del peticionario en la fecha en que se hizo el traslado de Mayagüez, sino que debió haber alegado también y probado a satisfacción de la corte, que no podía suponerse razonablemente que tales hechos pudieron existir, o que no pudieron ser comprobados por dicho solicitante en el ejercicio de la debida diligencia, con anterioridad a la fecha de dicha primera solicitud. En otras palabras, no vemos razón alguna por la cual las reglas que regulan las mociones de nuevo juicio fundadas en pruebas descubiertas nuevamente, por ejemplo, no deban ser aplicadas por analogía y con igual fuerza a un caso de esta clase.

No existe absolutamente nada en los autos que sugiera ninguna razón posible por la cual la corte de distrito de Aguadilla envió éstos casos a la Corte de Distrito de San Juan en completa desatención de la formal protesta que con anterioridad a dicha resolución le hizo el acusado y de la seria petición por escrito de que los mismos debían ser trasladados a Ponce por ser el distrito próximo inmediato a Mayagüez; de lo que se deduce según aparece ya de los autos de los procedimientos seguidos en la corte de distrito de Aguadilla o de la contestación al mandamiento expedido en este caso, que la corte de distrito de Aguadilla no ejerció de modo alguno la discreción legal que le confería la ley, o si la ha ejercitado, entonces al ejercitarla no ha observado el procedimiento prescrito por la ley en este particular.

Deben revocarse las diferentes órdenes que han sido impugnadas y devolverse el caso a la Corte de Distrito de Agua-

dilla para ulteriores procedimientos que no sean incompatibles con esta opinión.

*Con lugar la solicitud y anuladas las órdenes recurridas.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.