EL PUEBLO DE PUERTO RICO, peticionario y recurrente, *v.* JOSÉ RAMÓN SÁNCHEZ PÉREZ, acusado y recurrido.

*Número:* CE-88-582      *Resuelto:* 18 de noviembre de 1988

*Rafael Ortiz Carrión, Procurador General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo; *Julio Luis Castro,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Nuestra Constitución, en su Art. II, Sec. 11 de la Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1, elevó a categoría fundamental el derecho a juicio por jurado cuyo significado no es otro que el ser juzgado por doce (12) vecinos imparciales —libres de influencias extrañas— residentes del distrito judicial correspondiente al lugar donde alegadamente ocurrieron los hechos imputados. En *Pueblo v. Laboy,* 110 D.P.R. 164, 167 (1980), indicamos:

> . . . que seleccionar los miembros del jurado de un *grupo representativo de la comunidad* es una característica esencial del derecho a juicio por jurado consagrado en la Sexta Enmienda de la Constitución de los Estados Unidos. En *Taylor* v. *Lousiana,* 419 U.S. 522, 530 (1975), expresó: "El propósito de

un jurado es precaver contra el ejercicio de poder arbitrario —proporcionar el sentido común de la comunidad como protección frente al fiscal apasionado o errado y en preferencia a la reacción profesional o tal vez demasiado condicionada o prejuiciada de un juez. . . . Este vehículo profiláctico no existe si el cuerpo de jurados se compone únicamente de algunos segmentos especiales de la población o si numerosos grupos característicos quedan excluidos del sorteo para escoger a los jurados. Además, la participación de la comunidad en la administración de la justicia criminal no sólo es consistente con nuestra herencia democrática, sino que es decisiva para la confianza pública en la imparcialidad del sistema de justicia criminal. Limitar el servicio de jurado a solamente algunos grupos especiales o excluir segmentos particulares que desempeñan papeles importantes en la comunidad contraviene el concepto constitucional de un juicio por jurado."

El derecho a juicio por jurado consagrado en nuestra Constitución *también exige que los miembros del jurado sean seleccionados de un grupo de personas que represente adecuadamente a la comunidad. De no ser así, se desvirtuaría el derecho a juicio por jurado.* (Énfasis suplido.)

Con este marco conceptual en mente, atendemos el pedido del Ministerio Fiscal que cuestiona la negativa del Tribunal Superior, Sala de Humacao (Hon. Aida N. Molinary, Juez), a trasladar a otro distrito judicial las causas que penden contra José Ramón Sánchez Pérez por tres (3) cargos de violación técnica. Dicho foro reafirmó así su reserva de posponer su dictamen para una etapa más avanzada del proceso.

Los antecedentes procesales que motivan esa solicitud se remontan al 23 de mayo de 1986. En esa fecha se acusó a Sánchez Pérez por tres (3) cargos de violación técnica y uno por actos lascivos e impúdicos. En ese juicio —presidido por el Juez Hon. Fernando Gierbolini— el Jurado rindió veredicto de *no culpable* en cuanto al cargo de actos lascivos e impúdicos. Respecto a los demás delitos no medió acuerdo ni veredicto. En consecuencia, el tribunal disolvió el Jurado en los tres (3) casos de violación técnica para que fuera juzgado

ante otro panel. Absolvió al acusado de la infracción al Art. 105 del Código Penal, 33 L.P.R.A. sec. 4067.

Comenzado el nuevo proceso, el Ministerio Público solicitó y obtuvo la transcripción de los procedimientos de selección de cuatro (4) jurados del juicio anterior. En esa instancia, hizo constar su intención de solicitar el traslado al amparo de la Regla 82 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Posteriormente pidió el traslado para el Tribunal Superior, Sala de San Juan. Fundamentó su súplica en una serie de incidentes y circunstancias relacionadas con el caso anterior que, según su criterio, se estaban proyectando nuevamente en el proceso de la desinsaculación del actual Jurado. En su abono produjo declaraciones expositivas de las circunstancias personales del acusado —y su numeroso núcleo familiar— y sus relaciones con múltiples personas en los Municipios de Yabucoa, Maunabo, Humacao y Las Piedras; el interés demostrado a su favor por varios políticos y ex políticos locales prominentes, evidenciado por la asistencia de éstos en Sala durante el primer juicio; un incidente acaecido en ese proceso anterior con el jurado *suplente*, Benicio Ramos Vélez, en el baño del Tribunal, con Miguel A. Sánchez —hermano del acusado— consistente del comentario de este último de lo "caliente" del caso (apéndice IV, pág. 54) y el intento de influenciar a este jurado por una pareja de adultos extraños, no identificados, quienes se le acercaron a hablar a favor del acusado y de que regara la voz entre los otros miembros del Jurado, mientras Ramos Vélez se encontraba una noche en una iglesia de Luquillo (apéndice VIII); el comportamiento de la jurado preliminar, Conchita Maldonado Burgos, al inquirir de la policía Ana M. Rivera, que le diera su opinión del caso, y luego al reunirse con una de las hermanas del acusado cuando todavía integraba el panel general de jurado.

Subsiguientemente, el 16 de febrero de 1988 el Ministerio Fiscal amplió sus fundamentos con las declaraciones juradas

de tres (3) testigos adicionales. En esa ocasión, con apoyo en las mismas, adujo específicamente que el padre del acusado, el Sr. Rosa Sánchez Vargas, había sido Alcalde de Yabucoa y sucesor directo del anterior alcalde, Teófilo Morales —Representante a la Cámara por ese distrito— y que este último compareció a Sala durante el proceso anterior en repetidas ocasiones acompañando al acusado y a sus familiares; las influencias ejercidas durante el desfile de la prueba por algunas damas jurados a los demás, hablando sobre la buena reputación del acusado, y la condición de ex alcalde de su padre. Esas damas del Jurado indicaron que la presencia del político Teófilo Morales y la de Arturo Arroyo —otro ex Alcalde de Yabucoa— acreditaban la buena reputación del acusado y ellas dudaban de que fuera culpable.

No se cuestiona que el Ministerio Público demostró que el padre del acusado Sánchez Vargas fue alcalde en Yabucoa, que Teófilo Morales en tres (3) ocasiones también ocupó ese cargo y que, además, fue miembro de la Cámara de Representantes. Con vista a ciertas transcripciones, demostró cómo uno de los hermanos del acusado se dirigió al jurado suplente Benicio Ramos Vélez en el servicio sanitario del tribunal y, también, que dos (2) personas extrañas le expresaron sobre la buena reputación del acusado y que le habían hecho un "chanchullo". Apéndice VIII, pág. 88.

El 14 de abril, el tribunal declaró sin lugar el traslado a base de que el Ministerio Público no demostró *la imposibilidad de que se pudiera escoger un Jurado justo e imparcial en el segundo juicio, lo cual era más factible por la constitución de un nuevo panel de jurados.* El Ministerio Público pidió determinaciones de hecho adicionales y la reconsideración. El 29 de junio el tribunal accedió a algunas determinaciones adicionales, pero reiteró su negativa.

Así las cosas, el juicio fue fijado para el 27 de septiembre. Una vez la defensa pidió que fuera ventilado por Jurado, se optó por usar el *método largo* en su selección. A tal efecto el

tribunal llamó, juramentó e instruyó preliminarmente doce (12) candidatos. Inicialmente algunos indicaron al tribunal que no conocían a los abogados de las partes, al acusado ni a los testigos. La defensa luego consumió su turno de preguntas a esos candidatos. Ese proceso reflejó que los candidatos a jurado María Pérez Delgado —ex funcionaria del tribunal— y Luis Delgado Delgado admitieron conocer a los abogados de defensa e incluso al Fiscal. Surgieron además los hechos siguientes.

La *candidata número dos* —Dolores Hernández Cruz— indicó conocer a Lydia Sánchez, hermana del acusado, que a su vez era suegra de una sobrina suya. La conocía desde años atrás, al extremo de que durante las navidades de 1987 —antes de que fuera llamada a servir de jurado— compartieron en una actividad social familiar en casa de su sobrina. Expresó que como había sido citada, le gustaría participar.

Durante el examen del *candidato número cuatro* —Ángel Castro De León— el Ministerio Público le preguntó y él aceptó —en ausencia del resto de los candidatos— que había guardado silencio cuando la juez le había preguntado específicamente si conocía al acusado. Esa negativa la reiteró después al Fiscal. Sin embargo, posteriormente admitió que lo había saludado y que lo conocía desde hacía un (1) año. Contestó que aplicaría su manera de pensar por encima de las instrucciones del tribunal. Conocía también al Lic. Julio Castro, uno de los abogados de la defensa.

Con referencia al *jurado número cinco* —José R. Pérez Sosa— éste manifestó que fue candidato a Alcalde de Yabucoa. Oportunamente aceptó que conocía al acusado, quien era maestro, un ciudadano conocido y líder de actividades deportivas. Conocía a casi todos sus hermanos. Indicó que había escuchado que el imputado había tenido un encontronazo con una menor de edad y lo habían acusado. Aunque inicialmente *negó* que hubiese sido anunciado como testigo de defensa en el juicio anterior, aceptó tal hecho pero como

testigo de *reputación.* Explicó que accedió a los ruegos del propio acusado, de otros familiares y personas, y que posteriormente no fue utilizado en aquel proceso. Admitió que temprano en la mañana saludó en la Sala al acusado. Conocía al licenciado Castro de toda la vida, era compañero fraterno y le unían estrechos vínculos de amistad. Indicó que juzgaría al acusado por la prueba y si ésta lo demostraba lo encontraría culpable.

Ante este cuadro, sin la presencia del Jurado, el Ministerio Fiscal pidió al tribunal que reconsiderara su negativa al traslado. Se fundamentó en que de *cinco (5) miembros* del Jurado examinados hasta ese momento, *tres (3) eran amigos del acusado y/o sus familiares inmediatos, o eran testigos anunciados durante el primer procedimiento.* Adujo que todo el nuevo panel de jurado estaba contaminado y el Estado no tendría un juicio justo e imparcial en el Distrito Judicial de Humacao. La defensa se opuso. El tribunal *se reservó el fallo* e indicó que continuaría con la insaculación con miras a intentar lograr su integración. A solicitud del Estado emitimos orden de mostrar causa y paralizamos temporalmente los procedimientos en instancia.

## II

La garantía a un juicio por jurado imparcial compuesto por doce (12) vecinos del distrito es un derecho de origen constitucional que se proyecta sobre el acusado y Ministerio Fiscal. En circunstancias especiales, no impide el traslado a otro distrito. *Pueblo v. Santiago Acosta,* 121 D.P.R. 727 (1988); *Pueblo v. Chaar Cacho,* 109 D.P.R. 316, 325 (1980). Sin embargo, cabe notar que desde hace décadas sostuvimos que dicho pedido no puede concederse livianamente y que el peso de la prueba por perjuicio local recae sobre quien lo solicita. *Fajardo v. Soto Nussa,* 23 D.P.R. 77 (1915). "La presunción es que no hay prejuicios." *Pueblo v. Dumas,* 82 D.P.R. 416, 464 (1961). Y, en *Pueblo v. Figueroa*

*Rosa,* 112 D.P.R. 154, 160–161 (1982), citamos con aprobación lo siguiente: "'Las salvaguardas de la imparcialidad del Jurado, como el *voir dire* e instrucciones protectoras del juez, no son infalibles; es virtualmente imposible aislar los jurados de todo contacto o influencia que teóricamente pueda afectar su voto. Debido proceso significa un jurado capaz y dispuesto a decidir el caso únicamente de acuerdo con la prueba, y un juez en constante alerta para evitar incidentes de prejuicio y determinar el efecto de esos incidentes cuando ocurran.'"

En *Pueblo v. Santiago Acosta,* supra, págs. 735–736, —a tono con la Regla 81 de Procedimiento Criminal, 34 L.P.R.A. Ap. II— reconocimos expresamente la "autoridad de los tribunales a ordenar traslados y a identificar los criterios que deben ser considerados. La regla provee que tanto el Estado como el acusado podrán solicitar el traslado de la causa por cualquiera de las siguientes causas: (a) cuando por cualquier razón que no sea uno de los criterios para solicitar la inhibición de un juez, no pueda obtenerse un juicio justo e imparcial; (b) cuando no puede obtenerse un Jurado porque hay desorden público; (c) cuando esté en peligro la vida del acusado o algún testigo, o (d) cuando no pueda obtenerse un Jurado. Sin embargo, aunque procede el traslado por cualquiera de estos fundamentos, lo determinante al considerarse una moción al amparo de la Regla 81 de Procedimiento Criminal, *supra,* es el mandato de rango constitucional de un juicio justo e imparcial".

El trasfondo procesal y circunstancial expuesto refleja que ciertamente el Ministerio Fiscal demostró que el acusado Sánchez Pérez es una persona muy conocida en la demarcación del Distrito Judicial de Humacao. Durante muchos años ha sido maestro de escuela e instructor de clases de conducir vehículos de motor. Su familia es muy influyente. Su padre Rosa Sánchez Vargas —como ex Alcalde de Yabu-

coa por espacio de ocho (8) años— recibió el endoso electoral de un segmento sustancial de ciudadanos. Razonablemente esos endosos, en la idiosincracia y política puertorriqueña, subsisten más allá de los términos de incumbencia de un cargo y sus ramificaciones pueden afectar instancias como la de autos.

■ Sin embargo, la fama familiar y personal —incluso la percepción de que el acusado goza de buena reputación— no es suficiente por sí sola para propiciar un traslado. Como resolviéramos en *Maldonado v. Corte*, 71 D.P.R. 537, 543 (1950):

> No podemos convenir con la proposición de que la supuesta buena reputación del acusado y de su padre y la estimación de que gozan en la comunidad constituyen hechos suficientes para poder basar una opinión de que no puede obtenerse en Ponce un juicio justo e imparcial. No podemos creer que la Legislatura tuvo por miras disponer que solamente personas que gocen de mala reputación deben ser juzgadas en el distrito en que se alega se cometió el delito. Indirectamente así lo estaríamos resolviendo si aprobásemos el traslado por el único fundamento de que un acusado y su familia gozan de excelentes reputaciones y amistades en el distrito en que ocurrieron los hechos.

■ Por analogía, igual razonamiento se impone respecto a la filiación del acusado Sánchez Pérez con un ex Alcalde de Yabucoa. No basta el conocimiento que el quehacer político genera. Lo contrario significaría que ningún pariente de un político, o este mismo, podría ser juzgado en el foro judicial correspondiente a la demarcación territorial de su municipio o distrito representativo o senatorial. Después de todo, esa notoriedad e identificación política es una circunstancia que necesariamente no implica favores hacia un acusado. Frente a los adversarios también es susceptible de generar prejuicio. Así entendido, no es determinante, aunque sí exige de los tribunales un riguroso escrutinio selectivo

para evitar que la afiliación política —cualquiera que sea— incapacite al Jurado de poder juzgar imparcialmente el caso.

■ De igual modo, por razón del carácter *público* constitucional de los procesos judiciales —Art. II, Sec. 11 de la Carta de Derechos, *supra*— no podemos coincidir con el argumento de que la presencia diaria de figuras políticas del pasado o presente en una sala de justicia representa para uno o varios miembros del Jurado un indicador de buena reputación. La cuestión es más bien materia a ser aclarada durante la desinsaculación y, de ser necesario, en las instrucciones finales.

■ Ante estos factores, lo verdaderamente crucial e importante es que el reclamo de prejuicio sea fundado en algo concreto. Como expresáramos en *Maldonado v. Corte*, supra, pág. 543: "[a]dmitimos que la influencia y las relaciones de un acusado en determinado distrito pueden ser tan numerosas y tan arraigadas que sería prácticamente imposible para el Pueblo obtener un jurado que le pueda conceder al gobierno un juicio justo e imparcial libre de tal influencia."

■ Allí resumimos así la clave para descubrir el enigma: "[l]a notoriedad de un caso no es de por sí suficiente causa de traslado; la única cuestión a determinar es si, no empece la notoriedad del caso, *pueden encontrarse jurados que rindan un veredicto justo e imparcial.*" (Énfasis suplido.) *Maldonado v. Corte*, supra, pág. 545.

### III

Al aplicar estos principios al caso de autos, notamos que el resultado *neto* de la prueba del Ministerio Fiscal —excluida la fama o notoriedad del acusado y su numerosa familia, personal, profesional y política— es que en el pasado existieron unos intentos aislados de influenciar al Jurado. Además, que por sus relaciones con la comunidad y las de su

padre y abogado, la tarea de encontrar jurados libres de ataduras es una difícil y de gran reto para el tribunal. Cabe señalar que el desacuerdo del Jurado en el caso anterior no puede ser elemento decisivo. *Maldonado v. Corte,* supra. Ante esta realidad, compartimos la preocupación del Ministerio Fiscal y entendemos las razones para el traslado solicitado.

■ Sin embargo, al igual que el foro de instancia, en esta etapa no estamos convencidos de que sea "prácticamente imposible" seleccionar y lograr constituir del nuevo panel un Jurado capaz de rendir un veredicto justo e imparcial. Sólo se han examinado cinco (5) candidatos. Aunque los incidentes son serios, cuantitativamente no justifican *ahora* optar por esa medida. Debemos dar esa nueva oportunidad al foro de instancia. Su reserva discrecional de posponer esa decisión hasta agotados los esfuerzos razonables merece nuestro respeto y aprobación. Si no lo logra, deberá trasladarlo. Si lo supera no debe descartar —como medida cautelar tendente a evitar cualquier incidente extrajudicial que pudiera afectar su imparcialidad— su secuestro.

■ Cabe recordar las sabias admoniciones siguientes:
En Puerto Rico, donde el territorio es reducido y la población compacta, servida por medios de comunicación y difusión de eficacia máxima, sería imposible formar un jurado totalmente ignorante y desconocedor de alguno que otro detalle sobre la vida del acusado cuando éste, como en el caso del apelante, es persona que ha alcanzado connotación de figura pública. *La justicia no puede por tanto depender de la ignorancia, sino de la integridad de los jurados y de la firmeza de su compromiso de resolver guiados únicamente por la prueba que se presente en juicio.* (Énfasis suplido.) *Pueblo v. Tursi,* 105 D.P.R. 717, 720 (1977). Véase, además, *Pueblo v. Martín Aymat,* 105 D.P.R. 528, 534 (1977).

Por los fundamentos expuestos, *se dictará sentencia que expida el auto y que confirme el dictamen del foro de instan-*

*cia. Continuarán los procedimientos. Este dictamen no prejuzga su decisión final respecto al traslado en una etapa posterior.*

El Juez Asociado Señor Rebollo López, la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton concurren con el resultado sin opinión escrita.