EL PUEBLO DE PUERTO RICO, peticionario, *v.* CARLOS FIGUEROA ROSA, acusado y recurrido.

*Número:* O-81-429 *Resuelto:* 11 de febrero de 1982

---

*Héctor A. Colón Cruz, Procurador General,* y *Josefa A. Román García, Procuradora General Auxiliar,* abogados del peticionario; *Heyda Vigil McClin,* de la División de Apelaciones de la Sociedad para Asistencia Legal, abogada del recurrido.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En proceso seguido al recurrido bajo acusación de asesinato en primer grado por dar muerte a otro ser humano a puñaladas, luego de una hora de deliberación, el Jurado trajo un veredicto de asesinato en segundo grado, por votación de 9 a 3. La defensa, a cargo de la Sociedad para Asistencia Legal formuló moción de nuevo juicio sin más aseveración de fundamento que la expuesta en el

párrafo 3°: "Que el veredicto rendido por el [J]urado no constituye la expresión verdadera de la opinión del [J]urado." Acompañó ocho declaraciones juradas de miembros del Jurado que coinciden en la afirmación de que el veredicto no es su "verdadera expresión" pues su voto fue emitido con prisa porque se hacía tarde y estaban cansados. Uno de los jurados que suscribió tal declaración fue la Sra. María Erazo Rivera quien en la vista sobre la moción de nuevo juicio —sin que se hubiese alegado en la moción— declaró que el penúltimo día del juicio, y durante la sesión, una persona que no identificó le dijo que "recordara que tenía un hijo por las calles de Río Piedras" por lo que se sintió "personalmente amenazada". El juez de instancia desestimó correctamente el fundamento de prisa o festinación aducido en la moción, amparado en reiterada jurisprudencia de este Tribunal, destacando a *Pueblo* v. *Lebrón*, 47 D.P.R. 430, 431 (1934); y *Pueblo* v. *Ramírez*, 50 D.P.R. 234, 272-273 (1936). Sin embargo, el propio magistrado, aun reconociendo que no tenía base para determinar que la amenaza hubiese afectado el voto de esta jurado (Resolución, pág. 6) ordenó *sua sponte* la celebración de nuevo juicio.

El Procurador General recurrió en *certiorari* y luego de paralizar los procedimientos en instancia, en auxilio de nuestra jurisdicción, el 6 agosto, 1981, expedimos el auto.

El Pueblo recurrente alega como único error haber el juez concedido la moción de nuevo juicio sobre el incidente relatado por la señora Erazo, que debió excluir a tenor de la prohibición dispuesta en la Regla 42(C) de Evidencia, a saber:

Regla 42. *Jurado como testigo*

(A) . . . . . . . .
(B) . . . . . . . .
(C) En el curso de una investgación sobre la validez de un veredicto, un jurado no podrá declarar sobre lo ocurrido en el curso de las deliberaciones del Jurado ni sobre las razones

que tuvo para emitir su voto, o el proceso mental conducente a ello. Sin embargo, un jurado podrá declarar sobre si se presentó a la consideración del Jurado materia impropia y ajena a la deliberación de éste.

El apelante, beneficiado con la concesión de un nuevo juicio por fundamento distinto al promovido en su moción, trata de revivir su propio fundamento de prisa que no amerita más discusión, vista la jurisprudencia acotada por el juez al descartarlo, especialmente en *Pueblo* v. *Ramírez*, supra, a las páginas 272–273:

"Y aun en aquellas jurisdicciones que todavía observan la antigua regla y generalmente admiten *affidavits* de jurados, la regla no se extiende hasta incluir *affidavits* en los que se alegue que los jurados entendieron mal las instrucciones de la Corte. Si ellos difieren en cuanto a las instrucciones de la Corte, deben volver al salón para que les sean repetidas; y si dejaren de hacer eso, no se les debe permitir alegar después cuáles fueron sus impresiones o puntos de vista con respecto a las instrucciones. Si fuese la costumbre recibir *affidavits* de jurados para explicar los fundamentos de sus conclusiones, en casos disputados, pocos veredictos se sostendrían, pues podrían encontrarse jurados que alegasen como errores de derecho o de hecho, al dictar su veredicto, lo que en realidad no eran más que pensamientos posteriores, producidos por conversaciones con las partes interesadas . . . .

"Por las mismas razones el *affidavit* de un jurado no puede ser recibido para impugnar su propio veredicto demostrando que interpretó mal la evidencia o cuáles fueron sus impresiones en cuanto al efecto de su veredicto, o que él tenía una intención diferente a la expresada por el veredicto. Ni pueden admitirse *affidavits* de jurados, explicando la teoría o fundamentos sobre los cuales basaron su veredicto, con el propósito de impugnarlo."

Tanto el recurrente como la defensa dedican considerable argumento a la cuestión de admisibilidad del testimonio de la jurado Erazo, que es perdido esfuerzo, toda vez que el incidente ninguna repercusión tuvo en las deliberaciones del jurado y que no se trata de materia impropia y ajena a la deliberación que se hubiese presen-

tado a la consideración del cuerpo, según dice la Regla 42(C) transcrita. La realidad que gobierna este recurso es que independientemente de la cuestión de admisibilidad, la propia resolución afirma que no recibió testimonio de jurado alguno tendente a establecer que su voto en el veredicto hubiese sido influido por la peculiar amenaza. Aun en el supuesto de que adoptáramos la norma de la concordante Regla 606(b) federal de que el Jurado podrá declarar en cuanto a cualquier influencia externa impropiamente ejercida sobre cualquiera de ellos, queda la realidad factual, afirmada por el juez de que "[e]xaminados los jurados sobre si habían sido coaccionados o intimidados sus testimonios establecen que su voto no fue objeto de coacción o intimidación alguna". Resolución, pág. 2, *in fine*.

La observación o comentario anónimo —si lo hubo— que dijo escuchar la jurado Erazo sobre que "recordara que tenía un hijo por las calles de Río Piedras", visto el veredicto producido, no da muestra de haber influido en el ánimo de los nueve jurados que lo emitieron; pues si la frase procedía de fuente identificada con la víctima, no impidió la rebaja de la calificación del delito de asesinato de primero a segundo grado; y si de la parte del acusado, tampoco detuvo la apreciación de la prueba conducente a la convicción. Además, fue única y exclusivamente esta jurado Erazo quien de improviso en la vista, dijo haberse sentido "personalmente amenazada", mas como no dijo en qué forma había votado, tampoco hay medio de apreciar si el veredicto refleja o no indebida influencia. Quedan en el misterio cuáles fueren las alternativas del veredicto si ella no hubiese oído esa frase: ¿hubiera unido su voto a los nueve que votaron sin temor alguno, produciendo entonces un veredicto de 10 a 2? ¿Hubiera defendido, durante la hora de deliberaciones, un veredicto de primer grado, en vez de la rebaja acordada por mayoría? En la serie de especulaciones a que da lugar

la tardía insinuación de temor como factor de peso en su voto personal, pues había permanecido muda cuando el juez, antes de aceptar el veredicto, preguntó sobre la voluntariedad del mismo, se pierde todo concepto de firmeza y garantía de justicia en el juicio por Jurado. El veredicto no puede ser alterado por razón de indebida presión o influencia a menos que haya prueba prima facie de que ese extraño elemento pervirtió la decisión de mayoría. [1] Aquí no solo está ausente esa demostración de vicio en el veredicto, sino que la única miembro del Jurado que suscita la cuestión pone en tela de juicio su credibilidad porque no solo permaneció callada en el momento en que el juez recibe el veredicto del Presidente del Jurado, sino que pasado el tiempo, cuando se le pide una declaración en apoyo de nuevo juicio, se limita a decir que el factor prisa fue determinante en su voto, y por segunda ocasión olvida y suprime toda información respecto al comentario o amenaza a que luego atribuye su personal estado de ánimo, sin que todavía nos diga si bajo esa presión optó por unirse a la minoría de tres, que usualmente es recurso de los jurados para impedir la identificación de su voto, especialmente en los veredictos condenatorios. El veredicto del Jurado, como la sentencia del juez, es acto investido con la alta dignidad de la magistratura en la función juzgadora de la conducta de los hombres, y no es para echarse a un lado con liviandad e indiferencia. [2] Como demuestra el análisis de este incidente procesal el juez que dejó sin efecto el veredicto para conceder nuevo juicio no tuvo ante sí prueba alguna para concluir que la amenaza influyó el voto de la señora

[1] El privilegio del secreto en el cuarto de deliberaciones debe ceder si se demuestra prima facie que en dicho recinto ha ocurrido alguna anormalidad que afecte seriamente la realización de la justicia a fin de que pueda llegarse al esclarecimiento de la verdad. *Bigio* v. *Corte*, 46 D.P.R. 448, 463 (1934).

[2] Compete al acusado rebatir la presunción de que el Jurado basó su veredicto en la prueba, y no en hechos extraños o bajo indebida influencia o presión. *Pueblo* v. *Prados García*, 99 D.P.R. 384, 394 (1970).

Erazo, y mucho menos de que fuese determinante en el voto de alguno de los nueve que constituyeron la mayoría en el veredicto rendido.(3) Precisamente, evitar ' que el aislado proceder de un solo miembro abortara la unanimidad y anulara el esfuerzo y la labor colectiva del panel, fue razón práctica en el cambio a veredictos por mayoría de no menos de nueve. Ley Núm. 11 de 19 agosto, 1948 —hoy suplantada por la Regla 112 de Procedimiento Criminal.

 No puede atacarse el veredicto bajo la premisa de prejuicio implícito, y sí debe demostrarse la existencia de prejuicio real. En *Smith* v. *Phillips*, 455 U.S. 209 (1982), ha resuelto el Supremo federal que el hecho de descubrirse durante el juicio por doble asesinato y atentado a la vida que uno de los jurados tenía en proceso y ante la consideración del fiscal una solicitud de empleo como investigador, no implicaba necesariamente que estuviese prejuiciado; que en la vista sobre moción para anular el veredicto el juez de instancia no encontró evidencia alguna de opinión formada de culpabilidad, ni motivo siniestro o deshonesto en la radicación por el jurado, durante la celebración del juicio, de la solicitud de empleo; y que el juez estimó esa actuación del jurado una indiscreción, mas no indicio de conclusión prematura sobre culpabilidad del acusado, ni de su incapacidad para pasar sobre la inocencia o culpabilidad de éste. Dice la opinión:

> . . . el debido proceso no exige nuevo juicio cada vez que se coloca a un jurado en situación potencialmente comprometedora. Si esa fuera la regla, pocos juicios serían constitucionalmente aceptables. Las salvaguardas de la imparcialidad del Jurado, como el *voir dire* e instrucciones protectoras del juez, no son infalibles; es virtualmente imposible aislar los jurados de todo contacto o influencia que teóricamente pueda afectar su voto. Debido proceso significa un jurado capaz y dispuesto a decidir el caso únicamente de acuerdo

---

(3) Como antes se ha dicho, el juez examinó los jurados y ninguno dijo que hubiera votado bajo coacción o intimidación. Esto explica por qué la moción de la defensa no encontró mejor base que la inocua prisa.

con la prueba, y un juez en constante alerta para evitar incidentes de prejuicio y determinar el efecto de esos incidentes cuando ocurran. Tales determinaciones pueden propiamente lograrse en la vista [de la moción para dejar sin efecto el veredicto]. Pág. 217.

El acusado que alegue error perjudicial no puede descansar en el precepto o la expresión dogmática. Deberá demostrar que la decisión o actuación objetada tuvo impacto y relieve perceptible en la objetividad del juicio. Cuando está ausente ese resultado de lesión a un derecho fundamental, no puede levantarse un edificio de error con simple referencia a decisiones emitidas en otros casos sin identificar los hechos. La insistencia del recurrido en la festinación como vicio del veredicto, no nos mueve a pensar que estos jurados fuesen capaces de enviar un hombre a presidio sólo porque se hacía tarde y estaban cansados, teniendo la opción responsable de informar al juez la necesidad de recesar, práctica común en las deliberaciones. A pesar de que el monótono estereotipo de sus declaraciones juradas limitan la expresión personal de cada uno de los declarantes, en ninguna se dice que hubiesen votado en forma distinta de haberse tomado más tiempo, ni que el veredicto respondiese a otra consideración que no fuese la apreciación de la prueba. Queda demostrada la sabiduría de la Regla 42(C), que excluye de encuesta sobre validez del veredicto lo ocurrido en el curso de las deliberaciones del Jurado, las razones que tuvo para emitir su voto, y el proceso mental conducente a ello. Nada valdría un veredicto susceptible a ataque de sus propios autores porque sólo deliberaron una hora o porque no se complació a alguno que deseaba ampliación de instrucciones, en fin, porque no se atendió su particular preferencia en alguno de los múltiples aspectos de la deliberación. La institución del Jurado perecería en semejante laberinto.

Con estos antecedentes y fundamentos, la resolución de

15 junio, 1981 de la Sala de San Juan, que concedió un nuevo juicio *será anulada y se remitirá el caso a instancia para continuación de procedimientos compatibles.*

El Juez Asociado Señor Negrón García concurre con el resultado sin opinión.