EL PUEBLO DE PUERTO RICO, apelado, *v.* OSVALDO SANTIAGO ACOSTA, acusado y apelante.

*Número:* CR-86-53      *Resuelto:* 21 de junio de 1988

*Antonio E. Arraiza Miranda* y *Ludwig Ortiz Belaval,* abogados del apelante; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Al resolver esta apelación nos inspira el ideal de que la "fe de un pueblo en la justicia, como valor esencial de la democracia, debe ser mantenida por los tribunales a los más altos niveles de la responsabilidad pública". Canon I de Ética Judicial, 4 L.P.R.A. Ap. IV-A. Por eso los miembros de la Rama Judicial debemos siempre observar rigurosamente una conducta que estimule el respeto y la confianza del Pueblo de Puerto Rico: "De nada serviría la magnificencia del escenario en que la Justicia se administra, si la indiferencia, la ligereza o la corrupción anidase entre sus salas y habitáculos." F. Soto Nieto, *Compromiso de Justicia,* Madrid, Ed. Montecorvo, 1977, pág. 74.

En esta apelación el ex Secretario del Tribunal Superior de Arecibo, Osvaldo Santiago Acosta, cuestiona la validez del veredicto mediante el cual se le encontró culpable de treinta y seis (36) cargos de malversación de fondos públicos. Art. 216(a) del Código Penal, 33 L.P.R.A. sec. 4391(a). En apelación se limita a discutir señalamientos de error sobre el traslado del caso, incidentes con el Jurado y el derecho del acusado a testificar a su favor. Confirmamos.

I

Una extensa auditoría del Contralor de Puerto Rico sobre las operaciones fiscales de la Sala de Arecibo del Tribu-

nal Superior entre el 8 de septiembre de 1979 y el 18 de abril de 1983 reveló "la comisión de serias irregularidades y violaciones de ley por el Secretario del Tribunal, Sr. Osvaldo Santiago Acosta". Informe de Intervención DB-87, Tribunal General de Justicia de Puerto Rico, Tribunal Superior, Sala de Arecibo, pág. 1. Como resultado de esta investigación se encontró que había una deficiencia de fondos de $1,655,545 en las cuentas bajo la custodia del Secretario de ese tribunal.

El informe de la Oficina del Contralor fue sometido al Secretario de Justicia y al Director Administrativo de la Oficina de Administración de los Tribunales el 27 de mayo de 1983. Inmediatamente, el señor Santiago Acosta fue destituido de su posición y el Secretario de Justicia sometió treinta y seis (36) acusaciones por la apropiación de la cantidad de $223,521.16 de fondos de menores e incapacitados que estaban consignados en el tribunal.(¹) Art. 216(a) del Código Penal, *supra.*(²)

_____

(¹) De los autos surge que en las vistas celebradas el 14 y 21 de febrero de 1986 para considerar la solicitud de fianza el Sr. José Colón Colón, Auditor de la Oficina del Contralor de Puerto Rico, bajo juramento declaró:

"(1) Que era el auditor a cargo durante la auditoría practicada en el Tribunal Superior, Sala de Arecibo, para el período en que el Sr. Osvaldo Santiago Acosta se desempeñaba como Secretario del Tribunal.

"(2) Como producto de parte de la intervención practicada en la Secretaría del Tribunal Superior, Sala de Arecibo, se le habían sometido treinta y seis (36) casos por Malversación de Fondos Públicos (Art. 216(a)) ascendentes a DOSCIENTOS VEINTITRES MIL QUINIENTOS VEINTIUN DOLAR[ES] CON DIECISEIS CENTAVOS ($223,521.16).

"(3) Que la totalidad del faltante en dicha Secretaría del tribunal ascendía a UN MILLON SEISCIENTOS CINCUENTA Y CINCO MIL QUINIENTOS CUARENTA Y CINCO DOLARES ($1,655,545.00). Que este faltante constituye alrededor de 121 casos.

"(4) Que en adición [*sic*] al faltante todavía seguían apareciendo casos donde hay demandas contra el Estado por lo cual dicha suma puede ascender aproximadamente a DOS MILLONES DE DOLARES ($2,000,000.00)." Resolución del Tribunal Superior de 20 de noviembre de 1986. Apéndice 4, pág. 43.

(²) La conducta punible en cuestión aparece tipificada como sigue:

"Será sancionado con pena de reclusión por un término fijo de seis (6) años todo funcionario o empleado público y toda persona encargada de recibir, guar-

En agosto de 1984, antes de comenzar el juicio, el Ministerio Público, mediante moción debidamente apoyada por declaraciones juradas, solicitó el traslado del caso. Argumentó que no podría obtenerse un juicio justo e imparcial contra el ex Secretario del Tribunal en Arecibo, porque durante los treinta y tres (33) años que trabajó en ese Centro Judicial había desarrollado buenas relaciones con diversos integrantes del sistema, incluso jurados, jueces, fiscales, abogados, alguaciles y otros funcionarios. Además, sostuvo que había participado en la selección de jurados y tuvo acceso a las listas usadas para escoger los paneles.

El acusado se opuso a la moción y el foro de instancia celebró una vista para considerar la solicitud del Ministerio Público. Luego de oír los testimonios de los suscribientes de las declaraciones juradas, el tribunal ordenó el traslado de las causas a la Sala de San Juan del Tribunal Superior. Oportunamente el acusado recurrió ante nos mediante *certiorari* para revisar esta determinación. Mediante resolución, denegamos su petición.

Durante el juicio surgieron dos (2) incidentes relacionados con el Jurado que requirieron la intervención del magistrado de instancia. En el primero de éstos el magistrado declaró sin lugar una solicitud del abogado de la defensa para la descalificación de una jurado, por ser hermana de un fiscal del Departamento de Justicia de Estados Unidos. En el segundo, se enfrentó a un intento de influenciar al Jurado por parte de un jurado suplente.

Para investigar este segundo asunto, celebró una vista en cámara y examinó a cada uno de los jurados. Constató que un jurado suplente se había comunicado telefónicamente con los

dar, traspasar o desembolsar fondos públicos que realizare cualesquiera de los siguientes actos:

"(a) Sin autoridad legal se los apropiare en todo o en parte, para beneficio particular o el de otra persona." 33 L.P.R.A. sec. 4391(a).

miembros del panel para persuadirlos de la inocencia del acusado. Enterado de estas comunicaciones, el foro de instancia tomó las medidas correspondientes y, por estipulación de las partes, fue excusado del panel el jurado suplente que realizó las llamadas. Tanto la defensa como el Ministerio Público accedieron a continuar con el caso y ninguna de las partes solicitó que se disolviera el Jurado.

Concluida la presentación de la prueba de cada parte y los informes finales de sus respectivos abogados, el tribunal impartió instrucciones sobre los delitos de apropiación ilegal de fondos públicos, Art. 216(a) del Código Penal, *supra*, y del delito menos grave de negligencia en el cumplimiento del deber, Art. 215 del Código Penal, 33 L.P.R.A. sec. 4366.

Luego de varias horas de deliberación, el Jurado rindió veredicto de culpabilidad en los treinta y seis (36) cargos por el delito de apropiación ilegal de fondos públicos provisto en el Art. 216(a) del Código Penal, *supra*. El 6 de junio de 1986, el tribunal dictó sentencia que imponía condena al Sr. Osvaldo Santiago Acosta de diez (10) años de reclusión en cada cargo, a ser cumplidos concurrentes entre sí. Una evaluación independiente y cuidadosa de la exposición narrativa, los autos originales y los alegatos sometidos por las partes nos convencen de que procede la confirmación de la sentencia y la ratificación de las expresiones del tribunal de instancia citadas anteriormente.

## II

En su primer señalamiento de error el apelante cuestiona la decisión del tribunal de instancia que permitió el traslado del caso. Sostiene que al concederlo se le privó de su derecho constitucional a un juicio justo e imparcial. No tiene razón.

De ordinario, un acusado debe ser juzgado en el distrito donde se cometió el delito y, si éste es un delito grave, frente a un jurado de vecinos de la comunidad. Art. II,

Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1; *Maldonado v. Corte*, 71 D.P.R. 537 (1950). Sin embargo, esta regla no es absoluta. Cuando su aplicación afecte adversamente el derecho del acusado a un juicio justo e imparcial, un traslado puede ser la mejor manera de reconciliar el conflicto entre estos derechos.[3] Véase la discusión sobre el Art. II, Sec. 11 de nuestra Constitución, *supra*, en 3 Diario de Sesiones de la Convención Constituyente 1592–1593 (1952). Así concluimos en *Pueblo v. Chaar Cacho*, 109 D.P.R. 316, 325 (1980), cuando afirmamos que "[l]a cláusula constitucional que garantiza el derecho a juicio por jurado imparcial compuesto por 12 vecinos del distrito no impide el traslado de ciertos casos a otros distritos".

▄▄▄ Nuestra Regla 81 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, expresamente reconoce la autoridad de los tribunales a ordenar traslados y a identificar los criterios que deben ser considerados. La regla provee que tanto el Estado como el acusado podrán solicitar el traslado de la causa por cualquiera de las siguientes causas: (a) cuando por cualquier razón que no sea uno de los criterios para solicitar la inhibición de un juez, no pueda obtenerse un juicio justo e imparcial; (b) cuando no puede obtenerse un Jurado porque hay desorden público; (c) cuando esté en peligro la vida del acusado o algún testigo, o (d) cuando no pueda obtenerse un Jurado. Sin embargo, aunque procede el traslado por cualquiera de estos fundamentos, lo determinante al considerarse una moción al amparo de la Regla 81 de Procedimiento

---

[3] En *Rideau v. Louisiana*, 373 U.S. 723 (1963), el Tribunal Supremo de Estados Unidos señaló que un traslado puede ser la fórmula apropiada para asegurar el juicio imparcial garantizado por la Constitución. Este caso fue decidido en 1963, "pero su mensaje responde a más de 200 años de experiencia humana en su interminable búsqueda por una administración justa del derecho penal". (Traducción nuestra.) *Groppi v. Wisconsin*, 400 U.S. 505, 511 (1971). Véase 1 *Wharton's Criminal Procedure* 122 n. 55 (12ma ed. 1984).

Criminal, *supra,* es el mandato de rango constitucional de un juicio justo e imparcial.

■ Al evaluar una petición de traslado porque no se puede celebrar un juicio justo e imparcial los tribunales, al amparo de la Regla 81(a) de Procedimiento Criminal, *supra,* deben considerar los factores siguientes: (1) el tamaño de la comunidad; (2) la naturaleza y alcance de la publicidad del caso; (3) la identidad, reputación y posición en la comunidad tanto del acusado como de las víctimas; (4) la gravedad de las ofensas, y (5) la dificultad en obtener un panel de jurados. Véanse, por ejemplo: *Odle v. Superior Court of Contra Costa Cty.,* 654 P.2d 225 (Cal. 1982); *Martínez v. Superior Court of Placer County,* 629 P.2d 502 (Cal. 1981).

■ La decisión sobre la necesidad del traslado deberá estar fundamentada en los hechos de cada caso en particular y descansará sobre la sana discreción del tribunal sentenciador. *Maldonado v. Corte,* supra; *Pueblo v. Escobar,* 55 D.P.R. 505 (1939).

En el caso ante nos, la prueba revela que el tribunal a quo actuó correctamente y con gran prudencia al ordenar el traslado del caso. Al apelante se le acusaba de cometer un delito como funcionario del tribunal en que pretendía ser juzgado. Mantenía buenas relaciones con todo el personal del Centro Judicial de Arecibo y conocía a muchos de los candidatos potenciales del Jurado. Además, se le acusaba de ser el autor de la malversación de los fondos que cientos de personas del área tenían en ese Centro Judicial. Su alegado acto delictivo constituía el ejemplo de corrupción más serio que se ha suscitado en la historia de la Rama Judicial y el prestigio de los funcionarios del Centro Judicial de Arecibo estaba en entredicho. En estas circunstancias, no erró el tribunal de instancia al ordenar el traslado para asegurar un juicio justo e imparcial. *Pueblo v. Chaar Cacho,* supra.

## III

A. El apelante también cuestiona ciertas irregularidades en la selección y conducta del Jurado. Sin embargo, no presenta ningún fundamento válido para sostener su posición. Primeramente, se limita a especular sobre la imparcialidad de una jurado, porque no mencionó durante el proceso de desinsaculación que era hermana de un fiscal del Departamento de Justicia de Estados Unidos.

El planteamiento es frívolo. Nuestra Regla 121 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, enumera los fundamentos que permiten la recusación de un posible jurado. La regla señala como fundamento la incapacidad legal para actuar como jurado y ciertas posibles circunstancias de prejuicio implícito tales como relaciones consanguíneas, contractuales o de amistad con el acusado, sus abogados o los fiscales que se ven involucrados en el caso. Este tipo de "prejuicio implícito" que puede descalificar a una persona se fundamenta en la existencia de una relación que afecte la independencia y objetividad de la persona e impida que ejerza imparcialmente su función como jurado.(4) 3 *Wharton's Criminal Procedure* Sec. 447, pág. 250 (12ma ed. 1984); *Pueblo v. Dones Arroyo*, 106 D.P.R. 303, 318 (1977).

En el caso de autos, el apelante no ha alegado daño o perjuicio específico alguno por el hecho de que la jurado fuera hermana de un fiscal del Departamento de Justicia de

---

(4) Por lo general, las alegaciones sobre recusación de un jurado deben hacerse durante el proceso de desinsaculación o antes de presentarse prueba. Regla 118 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En esta etapa el tribunal puede examinar y descalificar a posibles jurados sin que se requieran objeciones previas de las partes. Sin embargo, como señala Wharton, el tribunal no tiene facultad para descalificar jurados perentoriamente luego de comenzado el juicio. Si las partes no objetan la presencia de un jurado, el tribunal no debe eliminarlo del panel, a menos que exista causa justa y suficiente para ello. *Wharton's Criminal Procedure*, supra, Vol. 3, Sec. 464, pág. 278.

Estados Unidos. De por sí, la relación no la descalifica. El hecho de tener un familiar en una agencia del Gobierno que se dedica a hacer cumplir las leyes (Policía o Ministerio Público, por ejemplo), no crea necesariamente este tipo de prejuicio que haría a una persona inelegible per se para actuar como jurado. E. Krauss y B. Bonora, *Jurywork: Systematic Techniques*, 2da ed., Nueva York, Ed. Boardman, 1988, Sec. 10.03[7][b], pág. 10-81. Véanse, por ejemplo: *United States v. Daly*, 716 F.2d 1499, 1507 (9no Cir. 1983); *United States v. Grismore*, 546 F.2d 844 (10mo Cir. 1976); *Mikus v. United States*, 433 F.2d 719, 724 (2do Cir. 1970).

Tampoco nos convencen las insinuaciones sobre la conducta moral de la jurado. Contrario a lo planteado por el apelante, ella no mintió durante la desinsaculación. En el *voir dire* se le preguntó únicamente si tenía algún familiar en el Departamento de Justicia de Puerto Rico y contestó en la negativa. Su parentesco era con un fiscal del Departamento de Justicia de Estados Unidos. Como ni ese fiscal ni el Departamento de Justicia federal intervinieron en este caso, no hay motivo alguno para cuestionar su imparcialidad.

Por otro lado, el apelante en ningún momento probó que ella no podría descargar su responsabilidad con la imparcialidad y la independencia de criterios que deben animar a un ciudadano que acepta la función de jurado en nuestro sistema de justicia. Tampoco se alegó daño o perjuicio alguno. En nuestro ordenamiento se presume que los deberes de un jurado se han cumplido con regularidad. *Pueblo v. Figueroa Rosa*, 112 D.P.R. 154, 159 (1982); *Pueblo v. Prados García*, 99 D.P.R. 384, 394 (1970). Aquí el apelante no ha aducido prueba alguna para rebatir esta presunción. En estas circunstancias, no vemos razón para revocar la sentencia.

B. Por otro lado, el apelante también impugna la discreción del tribunal de no disolver el Jurado después de que se

enteró que un miembro suplente había intentado influenciar a los demás miembros del panel. Además, señala que erró el tribunal al investigar el asunto en cámara y en ausencia del apelante. Nuevamente, se trata de alegaciones totalmente frívolas.

La exposición narrativa de la prueba señala que fue el abogado de la defensa quien sugirió que sería preferible que el apelante no estuviera presente en la vista investigativa celebrada en cámara. También se desprende que el apelante no objetó posteriormente la continuación del proceso. Por último, el apelante no ha expuesto el perjuicio causado por el incidente.

■ Recientemente señalamos, en *Pueblo v. Guzmán Camacho*, 116 D.P.R. 34, 39 (1984), que la discreción del juez de instancia al disolver un Jurado por aparente irregularidad merece deferencia por el tribunal apelativo. Es el juez de instancia quien está en mejor posición para hacer una evaluación inteligente de las circunstancias que requiere la disolución del Jurado.

■ En el caso de autos no hay fundamento alguno para cuestionar la decisión del ilustrado magistrado que presidió el juicio. Ciertamente, investigó el incidente y tomó todas las medidas cautelares necesarias para garantizar un juicio justo e imparcial. En este contexto, las especulaciones del apelante sobre el posible efecto perjudicial del incidente no son suficientes para sostener su argumento. *Pueblo v. Burgos Hernández*, 113 D.P.R. 834, 838 (1983). Debe presumirse que el Jurado fundamentó su veredicto en la prueba presentada y no en hechos extraños o en influencias foráneas. Además, la doctrina reconoce que "no todo error o irregularidad en un proceso macula la imparcialidad de un veredicto. Tiene que ser grave, perjudicial, sustancial e insubsanable". *Pueblo v. Guzmán Camacho*, supra, pág. 38.

En el caso de autos, en vista de que no hay evidencia de que ningún elemento extraño afectó la decisión o ejerció influencia indebida sobre el Jurado, no debemos alterar el veredicto. *Pueblo v. Figueroa Rosa*, supra; *Pueblo v. Prados García*, supra.

## IV

En su cuarto señalamiento de error el apelante alega que se debe revocar la decisión del tribunal inferior porque no se le advirtió de su derecho a testificar en su defensa. Fundamenta su argumento únicamente en la decisión del Tribunal Supremo del estado de Colorado en *People v. Curtis*, 681 P.2d 504 (Colo. 1984). Allí se determinó que el derecho de un acusado a testificar a su favor era tan fundamental que el tribunal debía proveer ciertas salvaguardas procesales para asegurar que su renuncia sea inteligente y voluntaria. Se concluye que el tribunal debe advertirle al acusado que puede declarar y las consecuencias de hacerlo. Sin embargo, esta doctrina no ha sido adoptada en ninguna otra jurisdicción en Estados Unidos. En cambio, ha sido criticada y rechazada por la mayoría de los tribunales. *Com. v. Siciliano*, 471 N.E.2d 1359 (Mass. App. Ct. 1984); *Com. v. Hennessey*, 502 N.E.2d 943 (Mass. App. Ct. 1987); *Com. v. Lagacy*, 504 N.E.2d 674 (Mass. App. Ct. 1987); *People v. Simmons*, 364 N.W.2d 783 (Mich. App. 1985); *State v. Allie*, 710 P.2d 430 (Ariz. 1985); *Cutter v. State*, 460 So. 2d 538 (Fla. App. 2 Dist. 1984); *State v. Hayes*, 334 S.E.2d 741 (N.C. 1985); *State v. Duran*, 731 P.2d 374 (N.M. App. 1986); *Coonce v. State*, 318 S.E.2d 763 (Ga. App. 1984).

Por imperativo constitucional el acusado tiene derecho a permanecer en silencio durante el juicio. Los tribunales hemos sido particularmente celosos en proteger el derecho de los ciudadanos a no incriminarse y hemos expresamente prohibido que su silencio se tome en consideración o

que el Ministerio Público comente sobre la negativa del acusado a testificar. Art. II, Sec. 11, Const. E.L.A., *supra*; *Pueblo v. González Colón*, 110 D.P.R. 812, 818 (1981); *Pueblo v. Esquilín París*, 98 D.P.R. 505 (1970); *Pueblo v. Esquilín París*, 96 D.P.R. 415 (1968); *Pueblo v. Perales Figueroa*, 92 D.P.R. 724, 726 (1965); *Pueblo v. Álvarez Trinidad*, 85 D.P.R. 593, 596 (1962).

La decisión de declarar en el juicio es una determinación táctica que debe tomar el acusado en consulta con su abogado. Si el acusado decide no declarar, no hay mandato constitucional que requiera que los jueces investiguen su decisión y verifiquen que fue voluntaria y con conocimiento de sus implicaciones. Véase, por ejemplo, *United States v. Systems Architects, Inc.*, 757 F.2d 373, 376 (1er Cir.), *cert.* denegado, 474 U.S. 847 (1985). Resolver lo contrario sería presumir que el acusado no contaba con representación legal adecuada que le aconsejara sobre sus derechos.

De los autos surge que a través de todo el proceso el apelante estuvo adecuadamente asistido por la misma representación legal que entendía las ventajas y peligros de utilizar el testimonio del acusado. El tribunal en ningún momento impidió que la defensa presentara sus testigos o que contrainterrogara a los del Estado. Además, como en Puerto Rico nuestra Constitución impide los comentarios sobre el silencio del acusado, Art. II, Sec. 11, Const. E.L.A., *supra*, cualquier advertencia del magistrado sobre el derecho de testificar a su favor podría también constituir una violación a sus derechos constitucionales a permanecer en silencio y no incriminarse.

V

Por otro lado, el apelante también sostiene que erró el tribunal de instancia al no impartir instrucciones para que

se incluyera en el epígrafe de la hoja de votación del Jurado el delito menos grave de negligencia en el cumplimiento del deber. Alega que la hoja debe contener todos los delitos por los cuales el tribunal imparte instrucciones al Jurado. Surge claramente de la exposición narrativa de la prueba que las hojas de votación permanecieron en sala hasta que pasaron al Salón de Deliberaciones junto a toda la prueba documental y que estaban a la disposición de las partes para ser revisadas en cualquier momento. El apelante en ningún momento objetó el procedimiento utilizado. Su señalamiento es inmeritorio.

▮▮▮▮ La hoja de votación tan sólo se usa para recoger el veredicto final en la deliberación del Jurado. No es una guía para que los miembros del panel se dejen llevar sobre los delitos que se imputan a los acusados. Para esto precisamente es que el tribunal tiene la obligación de ilustrar mediante instrucciones orales al Jurado. Se presume que el Jurado lleva a cabo su labor a base de la prueba y no de influencias externas. *Pueblo v. Figueroa Rosa*, supra; *Pueblo v. Prados García*, supra.

En el caso de autos el apelante no ha establecido fundamento alguno que nos lleve a concluir contrario a esta presunción. Sus especulaciones sobre el posible efecto sugestivo del epígrafe de la hoja de votación no son suficientes para inducirnos a revocar la sentencia apelada. *Pueblo v. Figueroa Rosa*, supra; *Pueblo v. Prados García*, supra.

## VI

En su último señalamiento de error, el apelante alega que no se le debió sentenciar a diez (10) años de prisión, cuando la pena fijada en el Art. 216(a) del Código Penal, *supra*, es de seis (6) años. Alega que no se pasó prueba de agravantes que ameritara el aumento en la pena. No le asiste la razón.

■ Desde el 19 de febrero de 1986 el Ministerio Público presentó una moción sobre circunstancias agravantes. Véase la minuta de 6 de junio de 1986. Para considerarla no era necesario celebrar una vista especial, a menos que existiera alguna controversia real sobre un hecho material que requiriera la presentación de prueba. Regla 162.4 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. *Pueblo v. Castro Muñiz*, 118 D.P.R. 625 (1987).

■ La Regla 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, recoge algunas de las circunstancias que pueden tomarse en consideración como agravantes al imponerse una penalidad. En el caso de autos, por lo menos se cumplieron dos (2) de éstas: primero, el delito evidencia designios criminales planificados y, segundo, implicó la apropiación de una gran cantidad de dinero que estaba bajo la custodia del Tribunal Superior. El delito cometido atenta contra la sana administración pública y es lesivo a los mejores intereses de la Judicatura. El tribunal de instancia elocuentemente explicó su decisión:

> La evidencia sobre culpabilidad en relación al convicto apelante fue tan abrumadora que demostró que no estamos tratando con un crimen cometido sin la reflexión debida. Por el contrario, la prueba dejó ver claramente que el Ex-Secretario del Tribunal Superior, Sala de Arecibo, elaboró un método, plan o esquema bien organizado que requirió una planificación detallada y una cuidadosa ejecución que s[ó]lo pueden llevar a cabo personas con poco o ningún respeto para el Sistema de Justicia en Puerto Rico.
>
> Más aún, la severidad de los delitos cometidos por el acusado-apelante no pueden ser subestimados. Apéndice 4, pág. 55.

El apelante no ha traído ante nuestra consideración las circunstancias atenuantes que hubieran justificado una pena más benigna. Por el contrario, abusó de la confianza de cientos de familiares que tenían los fondos de pensiones ali-

menticias despositados bajo su custodia. Aunque el Estado respondió por los fondos malversados, las personas afectadas no solamente no pudieron contar de inmediato con este dinero sino que, además, tuvieron que iniciar acciones legales contra el Estado Libre Asociado de Puerto Rico para recuperarlos.

En estas circunstancias, y en ausencia de evidencia de un claro abuso de discreción, no intervendremos con la determinación de la pena del tribunal inferior. *Pueblo v. López Reyes*, 109 D.P.R. 379, 381 (1980); *Pueblo v. Pérez Zayas*, 116 D.P.R. 197, 201 (1985).

Por los fundamentos expuestos, *se confirmará la decisión del Tribunal Superior, Sala de San Juan.*

El Juez Asociado Señor Ortiz se inhibió.