# 2002 DTA 122

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI - CAGUAS/HUMACAO/GUAYAMA**

EL PUEBLO DE PUERTO RICO
Peticionario

v.

JORGE MELENDEZ DE JESUS; ALEX ORTIZ ORTIZ
Recurridos

Núm. KLCE-2002-00661

San Juan, Puerto Rico, a 3 de julio de 2002

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Rodríguez García y Salas Soler

Rodríguez García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Ante nos la Oficina del Procurador General de Puerto Rico, mediante el presente recurso de *certiorari*, interesando que esta Curia revoque una resolución dictada por el Tribunal de Primera Instancia, Sala de Caguas, en que se declara SIN LUGAR una solicitud de descalificación de uno de los miembros en propiedad del panel de jurados, en el proceso que sigue el Pueblo de Puerto Rico contra los recurridos Alex Ortiz Ortiz y Jorge Meléndez De Jesús, ante aquel tribunal.

Atendido el recurso de *certiorari* presentado, se expide el auto solicitado, y dictamos Sentencia para REVOCAR la Resolución recurrida.

### I Trasfondo fáctico y procesal

Jorge Meléndez De Jesús y Alex Ortiz Ortiz se encuentran siendo procesados bajo acusaciones de Asesinato en Primer Grado (2 casos), Tentativas de Asesinato (2 casos), y varias infracciones a la Ley de Armas, ante el Tribunal de Primera Instancia, Sala de Caguas.

La selección del jurado comenzó los días 5 y 6 de junio de 2002, mediante el método largo en el proceso de desinsaculación, a solicitud de la defensa. Se nos indica en la petición que de un listado de 82 candidatos a jurados presentes, se constituyeron tres paneles de jurados; que del primer panel compuesto de catorce candidatos, examinados por el tribunal, la defensa y el Ministerio Público, cuatro fueron recusados por el Fiscal. Se comenzó en 7 de junio de 2002, la desinsaculación del segundo panel, compuesto por otras catorce personas, y se excusó a un jurado potencial por un viaje fuera del país.

En este segundo panel figuraba como candidata la Sra. Arlene Castro Soto, a la que como parte del *voir dire*, le formuló preguntas el tribunal, los abogados de la defensa y el Ministerio Público. Dijo tener 39 años de edad, ser ama de casa, y haber trabajado en restaurantes. Estudió hasta el cuarto año de Escuela Superior. Es casada y su esposo trabaja para el gobierno como operario, tiene tres hijos de 15, 21 y 22 años de edad; dos son estudiantes universitarios que trabajan a tiempo parcial, y la hija menor de 15 años también es estudiante. Indicó esta señora que lee los periódicos El Nuevo Día y Primera Hora, y que ve las noticias nocturnas en televisión y el programa "*Al Rojo Vivo*".

En el turno de preguntas del Ministerio Público, se le hicieron las preguntas rutinarias del *voir dire*, entre éstas, las siguientes:

*"¿Alguno de ustedes o algún familiar ha sido acusado o convicto por algún delito grave?*

*Al haber absoluto silencio de parte de los panelistas, dijo la Fiscal:*

*"Por su silencio, debemos entender en la negativa".*

Uno de los jurados informó de una convicción por delito menos grave, y se discutió ampliamente sobre el asunto.

Terminado el *voir dire* de este panel, la Fiscalía formuló dos recusaciones perentorias, del segundo panel, y como se estaba utilizando el método largo, también se recusaron dos personas del primer panel. La Sra. Arlene Castro Soto no fue recusada, permaneciendo en el panel.

El 11 de junio de 2002, fue llamado el tercer panel para el proceso de desinsaculación, se le hicieron al panel las preguntas de rigor, se excusó a un candidato por problemas emocionales, y la Fiscalía recusó a tres candidatos.

El 13 de junio de 2002, quedó constituido el Jurado, y ese día se le tomó el juramento preliminar, faltando únicamente escoger los jurados suplentes. La Fiscalía tenía disponibles dos recusaciones perentorias adicionales. El 18 de junio se escogió un panel de diez candidatos y se seleccionaron los dos suplentes. ■ El Ministerio Público no utilizó las perentorias.

En 25 de junio de 2002, durante la celebración del juicio, el Ministerio Público advino al conocimiento de que la Jurado Arlene Castro Soto tiene un familiar (hermano) convicto por homicidio voluntario, delito grave. Durante el proceso de desinsaculación del Jurado, se le preguntó al panel, en el cual se encontraba Arlene Castro Soto, si tenían algún familiar que hubiera sido acusado o convicto por delito grave. De igual forma, se le preguntó a ella y al resto del Jurado si ellos o algún familiar habían sido acusados o convictos por algún delito menos grave. Otros candidatos informaron su situación particular. Sin embargo, Arlene Castro Soto nada informó.

Traído el asunto a la consideración del Tribunal, el Honorable Juez Alberto Pérez Ocasio accedió a la solicitud del Ministerio Público y confrontó a la Jurado Arlene Castro Soto con la información. La Jurado cuestionada aceptó que se le había realizado dicha pregunta en el *voir dire* y que su contestación fue en la negativa. El Ministerio Público informó al Tribunal que un hermano de la Jurado había sido convicto en 1997 por Homicidio y Art. 4 de la Ley de Armas. Fue sentenciado a cumplir 10 años de reclusión en una institución penal. La Jurado lo visitaba en la institución penal. Terminaba de cumplir, el recién pasado 30 de junio de 2002, y desde el año 2000, se encontraba en supervisión electrónica.

La parte pertinente del interrogatorio en Sala, ausente el resto del Jurado, a Castro Soto, se transcribe como sigue: ■

*"JUEZ: Quisiéramos aclarar un asunto con usted en el día de hoy. Durante las preguntas que hicieran tanto los Sres. Fiscales como los Sres. Abogados, se les preguntó al panel en general; que si alguno de ustedes o alguno de sus familiares han sido acusado o convicto de algún delito grave. ¿Correcto?*

*JURADO ACS: Ajá. (asintió a la vez con la cabeza)*

*JUEZ: Cuál fue su contestación?*

*JURADO ACS: Que no.*

JUEZ: Alguno de sus familiares ha sido culpable de algún caso, ha cumplido en la cárcel por algún caso?

JURADO ACS: Bueno; o sea, mi familia ha tenido problemas con la ley...pero, si así, pero...no...;o sea, de... de...

JUEZ: De qué?

JURADO ACS: Los familiares como, como...O sea, mis hermanos han tenido problemas con la justicia y eso, pero no...

JUEZ: Fíjese que la pregunta fue que si alguno de ustedes o alguno de sus familiares ha sido convicto de algún delito grave? Y ahí usted me contesta que no. Entonces, se la hago más clara para que entienda...

JURADO ACS: Ajaá...

JUEZ: A los efectos de si algún hermano suyo o algún familiar, o algún tío, o algún primo, ha sido culpable, ha cumplido en la cárcel, y ahí entonces, cuando le hago esta pregunta un poco más clara, dice: ah, sí mis hermanos...

JURADO ACS: Bueno sí, pero que...a esa pregunta yo entiendo personas cercanas así a... Pues mis hermanos son personas cercanas, pero que...y...han tenido problemas sí...

JUEZ: Y en aquella ocasión ud., como hoy, a la primera pregunta que le hice, dijo que no. Sin embargo ahora, con esta pregunta...

LCDO. CAMACHO: Juez, perdóneme. Podemos acercarnos? (Breve argumentación en el estrado)

JUEZ: Estamos aclarando en el panel en la primera ocasión se hizo la pregunta en general y en este caso usted no contestó. Ahora yo se la hago directamente a usted y tal y como se hizo en aquella ocasión, y hoy usted me contesta que no. Sin embargo, se la hago de otra manera, de forma que usted me entienda qué significa esto...

JURADO ACS: Y ajaá...y osea..., a lo mejor en esos momentos, pues...porque ellos hayan tenido sus problemas tiempo atrás, pero por lo menos yo de tener problemas así...de...nunca he tenido.

JUEZ: Y un familiar suyo?

JURADO ACS: Bueno, como le dije...mi hermano.

JUEZ: Y en aquella ocasión en que se le preguntó al panel general: si alguno de ustedes o algún familiar suyo había sido acusado o convicto de delito grave, usted no contestó. ¿Por qué no contestó? ¿Usted recuerda que se le hizo la pregunta en aquella ocasión?

JURADO ACS: Bueno, se hicieron varias preguntas, pero...

JUEZ: Específicamente esa pregunta que yo le hago: ¿si alguno de ustedes o sus familiares han sido acusados o convictos de algún delito grave? ¿Usted recuerda que en aquella ocasión se le hizo a todo el panel? ¿Lo recuerda?

JURADO ACS: Bueno sí, recuerdo que se le hizo ese tipo de pregunta, pero...O sea, en ese momento, pues no me vino a la mente...mi hermano tuvo problemas con la justicia, pero...

*JUEZ: Es ahora, cuando le pregunto; mire, eso significa que si algún familiar, o hermano ha sido declarado culpable o ha estado cumpliendo en la cárcel por algún delito, es que usted dice sí?*

*JURADO ACS: Bueno sí, pues mi hermano.*

*JUEZ: ¿Qué hermano?*

*JURADO ACS: Francisco Castro.* ■

*JUEZ: ¿Cuando?*

*JURADO ACS: Como 6 ó 7 años atrás.*

*JUEZ: En la actualidad, ¿sabe dónde está?*

*JURADO ACS: El está trabajando en el área metropolitana.*

*JUEZ: ¿Trabajando?*

*JURADO ACS: Ahja...trabajando.*

*JUEZ: Le pregunto si en aquella ocasión en que se hizo la pregunta en general usted nos dijo que no; tampoco contestó, si fue porque usted entendía que no debía contestarlo, o fue porque realmente no la entendió, o si mire la entendí, pero entendía que no tenía que contestarlo?*

*JURADO ACS: Pues, a lo mejor en aquel momento cuando hicieron la pregunta, pues yo no...o sea, no me acordé en ese momento del problema que había tenido hace años atrás.*

*JUEZ: Pero, ¿sí se acuerda que se hizo la pregunta?*

*JURADO ACS: Sí.*

*JUEZ: Y yo se la repetí más o menos tal como se le hizo en aquella ocasión; y, en primera instancia ud. dijo no. Le pregunto ¿si hubo una explicación, si ud. realmente no quiso decirlo?*

*JURADO ACS: No, en ese momento no pensé en ello; eso fue bastante tiempito atrás.*

*JUEZ: Gracias doña Arlene. Se puede retirar."*

La contención del Ministerio Público es que la omisión de la Jurado Arlene Castro Soto de dar información esencial relativa a sus hermanos convictos por delito grave implica falta de honestidad, parcialidad y haberle faltado al juramento que hiciera bajo la Regla 119 de las de Procedimiento Criminal. Si el Ministerio Público hubiera conocido esa información tan esencial, podía haber utilizado sus recusaciones perentorias. Que esa jurado debía ser excusada, ya que no sería imparcial en el proceso y dejarla sería traer oscuridad en el proceso.

El Tribunal declaró No Ha Lugar a la solicitud del Ministerio Público, ordenando que continuara Arlene Castro Soto como parte del Jurado. El Ministerio Público solicitó reconsideración, argumentando extensamente, a lo que el Tribunal declaró No Ha Lugar la reconsideración.

Inconforme con el referido dictamen, el Pueblo de Puerto Rico, representado por el Procurador General,

presentó ante nos su petición de *certiorari* en 28 de junio de 2002, en el que señala el siguiente error:

*"Incidió el Honorable Tribunal de Primera Instancia al no acceder a la solicitud del Ministerio Público para que la jurado Arlene Castro Soto fuera descalificada del Panel de jurado. La interpelación posterior de esta jurado por el Tribunal demostró a cabalidad que ocultó información durante la desinsaculación del* jurado, que hubiera dado lugar a su recusación por el Ministerio Público.

*La negativa del Tribunal a quo a descalificar a la referida jurado está fundamentada en una interpretación errónea del caso Pueblo v. Santiago Acosta, 121 D.P.R. 727 (1988), así como de una interpretación inflexible de la Regla 121 de Procedimiento Criminal. Además, ignora el caso de El Pueblo v. Kenneth Irizarry Ayes, 99 M.J.A. 1256.*

*Su resolución errónea en Justicia y Derecho atenta contra la imparcialidad del proceso y la razón de ser de éste que es la búsqueda de la verdad para hacer justicia. Petición de Certiorari, pág.5."*

El mismo día de recibida la petición de *certiorari*, en 28 de junio de 2002, emitimos una resolución en la que le concedimos a la parte recurrida hasta el día 2 de julio de 2002 a las 3:00 p.m., para que mostrara causa por la cual no se debía expedir el auto solicitado.

En 2 de julio de 2002, la parte recurrida presentó su *"Escrito Mostrando Causa".*

Contando con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II Derecho Aplicable

La Constitución del Estado Libre Asociado de Puerto Rico, en su Art. II Sec. 11, establece que:

"...

*En los procesos por delito grave, el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve.*

...".

Según se desprende de nuestra Constitución, todo acusado tiene derecho a que el panel de jurados que lo va a juzgar, esté compuesto por un grupo de personas representativo de la comunidad. De lo contrario, se violenta el derecho del acusado a un juicio por jurado. *Pueblo v. Sánchez Pérez,* 122 D.P.R. 606, 610 (1988); *Pueblo v. Laboy,* 110 D.P.R. 164, 167 (1980). Asimismo, la Regla 112 de Procedimiento Criminal establece que el jurado deberá estar compuesto por doce (12) vecinos del distrito. 34 L.P.R.A. Ap. II, R 112.

Los delitos que se le imputan a los peticionarios son de naturaleza grave, por lo que los acusados tienen derecho a que doce ciudadanos residentes en el distrito judicial donde se está viendo la causa diriman su inocencia o culpabilidad, según lo dispuesto en la Regla 111 de las de Procedimiento Criminal, 34 L.P.R.A., Ap. II, R 111. Es el jurado el que juzgará las cuestiones de hecho que las partes presenten y decidirá la culpabilidad o inocencia del acusado. El magistrado será el árbitro imparcial que se limitará a resolver las cuestiones de derecho, impartir orden al juicio, instruir al jurado sobre la ley aplicable al caso y dictar sentencia. Nevares Muñiz, D. *Sumario de Derecho Procesal Penal Puertorriqueño.,* Cap. XIII, 3ra Ed, pág. 141. El Tribunal Supremo de Puerto Rico ha expresado que existe una presunción de que el jurado habrá de cumplir sus deberes con regularidad e imparcialidad. *Pueblo v. Figueroa Rosa,* 112 D.P.R. 154 (1982): *Pueblo v. Santiago*

*Acosta*, 121 D.P.R. 727 (1988).

El acusado tiene a su disposición el proceso de desinsaculación del jurado donde se determinará si las personas que lo componen pueden actuar libres de prejuicio o interés. Mediante este proceso, si no lo renuncia, tendrá el peticionario oportunidad de recusar perentoriamente o por motivo expreso, a los jurados, según proveen las Reglas de Procedimiento Criminal, *supra*.

Las recusaciones motivadas de un jurado bajo dichas reglas pueden realizarse por los siguientes fundamentos: (1) la persona tiene parentesco de consanguinidad o afinidad dentro del cuarto grado con el acusado, su abogado, el fiscal, con la persona que se alega agraviada o con aquélla cuya denuncia motivó la causa; (2) tiene con el acusado o con la víctima relaciones de tutor y pupilo, de abogado y cliente, de patrono y empleado, o de propietario e inquilino; (3) es parte contraria al acusado en una causa civil, o que lo ha acusado o ha sido acusado por él en un proceso criminal; (4) ha actuado en jurado que ha juzgado a otra persona por los mismos hechos o ha pertenecido a otro jurado que juzgó la misma causa; (5) tiene conocimiento personal de hechos esenciales en la causa o; (6) **que no puede juzgar la causa con completa imparcialidad**. Regla 121 de Procedimiento Criminal, 34 L.P.R.A., Ap. II, R. 121.

*"Este tipo de 'prejuicio implícito' que puede descalificar a una persona se fundamenta en la existencia de una relación que afecte la independencia y objetividad de la persona e impida que ejerza imparcialmente su función como jurado. (Enfasis suplido.) Pueblo v. Santiago Acosta, 121 D.P.R.727 (1988)."*

Para que la recusación motivada sea válida, la misma debe estar fundamentada en uno de los preceptos antes citados de la Regla 121 de Procedimiento Criminal, *supra. Pueblo v. Nazario Hernández*, 138 D.P.R. 760, 772 (1995). Sin embargo, la concesión o denegación de las recusaciones motivadas, depende en gran parte de la discreción del tribunal sentenciador. *Pueblo v. Prados García*, 99 D.P.R. 384, 393 (1970).

Generalmente, los fundamentos sobre la descalificación o recusación de un jurado deben realizarse durante el proceso de desinsaculación o antes de presentarse la prueba. Regla 118 de Procedimiento Criminal, 34 L.P.R. A., Ap. II, R. 118. Los tribunales no tienen la facultad de descalificar jurados perentoriamente luego de comenzado el juicio. *"Si las partes no objetan la presencia de un jurado, el tribunal no debe eliminarlo del panel, a menos que exista causa justa y suficiente para ello." Wharton´s Criminal Procedure*, 12th Edition, Charles Torcia, Ed. Lawyers Corp., NY 1975, Sec. 464, pág. 278, según citado en *Pueblo v. Santiago Acosta, supra*.

En el caso de autos, Arlene Castro Soto evadió dar información pertinente e importante que le fue solicitada por el Ministerio Fiscal durante el proceso de desinsaculación.

En su Resolución, el Hon. Tribunal recurrido razonó para denegar la recusación de Castro Soto indicando:

*"Luego de analizar la totalidad de las circunstancias del presente caso, y examinada la jurado (Arlene Castro Soto) con el propósito de verificar si esta persona incurrió en conducta que entienda que la incapacita o descalifica para continuar sirviendo como jurado, entendemos que al ser una pregunta general en la que se le hizo al panel con terminología jurídica y una vez este Juez en el día de ayer le hizo la pregunta en "términos más sencillos para una persona lega", la jurado entendió y explicó las razones por la cual no hizo esas exposiciones con anterioridad.*

*No existiendo en este momento impedimento jurídico de conformidad a las Regla 96 y 121 de Procedimiento Criminal, y de la jurisprudencia interpretativa del "PUEBLO V. SANTIAGO AGOSTA" (121 DPR 727, 1988) a las páginas 737 a 739, concluimos que la jurado ARLENE CASTO SOTO puede continuar sirviendo como jurado."*

Diferimos de la posición del ilustrado Tribunal.

Los incidentes acaecidos respecto a la jurado Castro Soto, nos ofrecen dos fundamentos para concluir que no es una jurado idóneo.

*Primero*, bajo juramento, Castro Soto se negó a admitir que tenía, por lo menos un hermano, Francisco, que cometió delito grave, fue procesado y convicto, cumplió condena de prisión, y estaba bajo supervisión electrónica cuando se le hace la pregunta, posible comisión de perjurio; y

*Segundo*, si omitió admitir algo tan trascendental en la vida de una familia, como lo es un hermano en prisión, porque alegadamente, la pregunta de si tenía un familiar **acusado** o **convicto** de delito grave, porque la misma era "*terminología jurídica*", como concluyó el Tribunal, esta jurado no estaría entonces capacitada para entender las instrucciones que contienen términos jurídicos, las cuales necesariamente se tienen que impartir al jurado.

El Tribunal Supremo ha resuelto que la determinación de si la omisión de un jurado en proveer información en el *voir-dire*, ya fuese intencional o inadvertidamente, constituye un fundamento para la concesión de un nuevo juicio, es una cuestión de hecho a ser determinado por el Tribunal de Primera Instancia en el ejercicio de su discreción. Es por tal razón que este foro apelativo no alterará su actuación, a no ser que se demuestre un claro e inequívoco abuso de discreción, por lo que cada caso deberá juzgarse según sus hechos particulares, considerando el perjuicio real que pudo haberse causado, en vista de la totalidad de las circunstancias. *Pueblo v. Rivera Nazario* 141 D.P.R. 865 (1996); *Pueblo v. Prieto Maysonet*, 103 D.P.R. 102 (1974); *Pueblo v. Agosto Castro*, 102 D.P.R. 441 (1974); *Pueblo v. Vázquez Izquierdo*, 96 D.P.R. 154 (1968).

Este Tribunal de Circuito de Apelaciones, en *Pueblo v. Irizarry Ayes*, 99 JTA 1256 (KLCE-97-01052 y KLCE-97-01063), ▮ atendió una situación similar al caso de autos. En este caso, un miembro del jurado que participó en el juicio en el que fueron declarados culpables unos acusados, negó u omitió información que se le preguntó en el *voir-dire*. En su análisis se examinó y discutió exhaustivamente la jurisprudencia federal donde se ha discutido la norma aplicable para la concesión de un nuevo juicio cuando un jurado potencial omite información en el proceso de desinsaculación del jurado. A tales efectos, cita *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), donde el Tribunal Supremo estableció los principios que gobiernan el derecho de una parte a un nuevo juicio en un caso civil, basado en el fundamento de que un jurado potencial no divulgó información en el *voir-dire* y expresa:

*"El Tribunal Supremo establece la norma de que para que una parte pueda obtener un nuevo juicio en esa situación, tiene que demostrar dos cosas: (1) primero tiene que demostrar que un jurado ha fallado en contestar honestamente una pregunta material en el voir-dire, y (2) luego demostrar que la contestación correcta a la pregunta hubiese provisto una base válida para la recusación motivada de ese jurado.*

*El Tribunal Supremo añadió que los motivos para ocultar información pueden variar, pero que sólo aquellas razones que afecten la imparcialidad de un jurado son las que puede decirse que verdaderamente afectan un juicio justo."*

En la referida sentencia emitida por este Foro, también se hace referencia a un caso donde se concedió nuevo juicio porque "*...un jurado no reveló que tres familiares cercanos habían sido convictos de delito, cuando se le preguntó en el voir-dire si tenía algún familiar que hubiese sido convicto...*". U.S. v. Bynum, 634 F.2d 768 (4th Cir. 1980). Añade, además:

*"...la Corte de Apelaciones, citando a U.S. v. Bynum, supra, señala que **cuando un jurado oculta su posible falta de objetividad y esto se combina con la falta de veracidad en las contestaciones que da ese***

*jurado en el voir-dire, el resultado es la privación del derecho del acusado a un juicio justo."* (Énfasis suplido).

Luego de una excelente discusión del derecho aplicable y su aplicación a los hechos del caso, el hermano panel determinó que procedía la celebración de un nuevo juicio y concluye:

*"La participación de una persona como jurado debe ser el resultado limpio de un **voir-dire** que ha tenido espacio para respirar la verdad. Cuando el **voir-dire**, en cambio, se nutre del aire denso de la ocultación o de la omisión de información crucial en la cual basar decisiones vitales para los derechos del acusado, con la consiguiente permanencia como juez lego del responsable de tal acto, el juicio deja de ser ese magnífico instrumento humano para esclarecer la verdad y se convierte en la fea distorsión de nuestras imperfecciones. El **voir-dire** es el mecanismo para discernir el trigo de la cizaña y los tribunales deben ser rigurosos en evitar que ambos crezcan juntos. Nuestra Cláusula de Debido Proceso de Ley, que es de factura más ancha que su contraparte federal, requiere que se siegue la cizaña. Y si, como en el caso de autos, la misma no se siega a tiempo y se descubre sólo cuando ya el trigo ha dado frutos, la misma Cláusula requiere que el trigo sea totalmente descartado, por más abundante que haya sido la cosecha."*

En el presente caso, nos encontramos con la situación de que Arlene Castro Soto omitió información en el *voir-dire*, al no revelar que tiene un hermano que fue convicto por el delito grave de homicidio voluntario, por el que cumple condena. Dicha información, de haberse divulgado, hubiese provocado que el Fiscal la recusara perentoriamente, por lo que procedería ordenar la celebración de un nuevo juicio.

No obstante, en la etapa en que se encuentra el proceso judicial, para acelerar la tramitación del caso, procede la imposición de una medida menos drástica, que la de ordenar un nuevo juicio. Lo que procede en este caso es el descalificar a la jurado Arlene Castro Soto y sustituirla con uno de los dos jurados suplentes, a tenor con la Regla 127 de las de Procedimiento Criminal, 34 L.P.R.A., Ap. II, R. 127, que dispone lo siguiente:

*"Si en cualquier momento antes de haberse sometido finalmente el caso al jurado, uno de los jurados regulares muriese, o se enfermase en tal forma que quedase imposibilitado para cumplir sus deberes, o tuviese que ser relevado por causa suficiente, el tribunal ordenará su sustitución por el jurado suplente, si hubiere uno sólo. Si hubiere más de uno, se sorteará el sustituto. Al someterse el caso al jurado, el tribunal excusará a los jurados suplentes que no se hubieren utilizado."*

En otras palabras, actuar como se hubiese actuado si esta señora se hubiese indispuesto o enfermado.

### SENTENCIA

Por los fundamentos antes expuestos, se expide el auto de *certiorari* solicitado, y se dicta sentencia para REVOCAR la Resolución recurrida, y ordenar la descalificación de la Jurado Arlene Castro Soto, y que ésta se sustituya por el suplente que resulte electo en el sorteo, conforme la Regla 127 de Procedimiento Criminal, *supra*.

NOTIFÍQUESE inmediatamente por fax, y por la vía ordinaria. La parte dispositiva de esta sentencia se le notificará por teléfono al Hon. Juez, a la Fiscalía de Caguas, y a los abogados que comparecen en el escrito de *certiorari* por los recurridos.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.

Lcda. Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2002 DTA 122**

**1.** No surge del recurso cuándo fueron seleccionados los restantes dos jurados para completar los doce miembros del panel regular.

**2.** Petición de *Certiorari*, Anejo XIII, págs. 13-16 (Transcripción Parcial de Vista de Juicio en 25 de junio de 2002.

**3.** Convicto 1997 por Homicidio y Art. 4 de la Ley de Armas. Fue sentenciado a cumplir 10 años de reclusión en institución penal. Su hermana Arlene Castro Soto lo visitaba en la institución penal. Terminaba de cumplir el 30 de junio de 2002 y desde el 2000 se encuentra bajo supervisión electrónica.

**4.** Circuito Regional de Bayamón, panel integrado por los jueces Sánchez Martínez, Cotto Vives y Urgell Cuebas.