EL PUEBLO DE PUERTO RICO, apelado, *v.* EDWIN HERNÁNDEZ SANTANA, acusado y apelante.

*Número:* CR-93-83          *Resuelto:* 6 de junio de 1995

*Pablo Colón Santiago*, abogado del apelante; *Pedro A. Delgado Hernández, Procurador General*, y *Ricardo E. Alegría Pons, Procurador General Auxiliar*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Edwin Hernández Santana acude ante este Tribunal en revisión de la sentencia de nueve (9) años de presidio —*a ser "cumplida" la misma bajo el régimen de la Ley de Sentencia Suspendida*— que le fuera impuesta por la *Sala de Aibonito* del Tribunal Superior de Puerto Rico como consecuencia de haber sido convicto, por el *Jurado* que intervino como juzgador de los hechos en el proceso que se le celebrara, del delito de *Tentativa de Asesinato* que le imputara el Ministerio Fiscal, en relación con unos hechos acaecidos el día 12 de septiembre de 1990, en horas de la noche, *en Santa Isabel*, Puerto Rico.

El juicio originalmente estuvo señalado para celebrarse en la *Sala de Ponce* del Tribunal Superior de Puerto Rico.

Solicitado el *traslado* del mismo por el Ministerio Fiscal —*por razón de que Hernández Santana había laborado en dicha Sala por muchos años como Alguacil Auxiliar a cargo de llevar y traer a sus casas a los miembros del panel de jurado de dicho distrito judicial, cuando las circunstancias así lo hacían necesario*— la Sala de Ponce, con la *objeción* de la defensa, ordenó el *traslado* del caso a la mencionada Sala de Aibonito del Tribunal Superior de Puerto Rico.

Comenzado el proceso, por jurado, ante la Sala de Aibonito —*y habiendo ya declarado dos (2) de los testigos de cargo*— advino "a la luz pública", o al conocimiento del foro de instancia y de la defensa, que el Ministerio Fiscal tenía en su poder copia de unas declaraciones juradas —*incluyendo copia de una declaración del imputado Hernández Santana*— que la Oficina de Administración de los Tribunales había tomado en el curso de una *investigación administrativa* que había realizado por motivo del cargo de Alguacil Auxiliar que ocupaba dicho imputado al momento de la ocurrencia de los hechos.

La defensa solicitó del tribunal de instancia el archivo y sobreseimiento definitivo, *con perjuicio*, de la causa criminal, ello al amparo de las disposiciones de la Regla 247 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, por alegadamente haberse violado el debido proceso de Ley "por cuanto en crasa inobservancia de las disposiciones de la Sección 28 de la ley número 11 de 24 de julio de 1952 ... el Ministerio Fiscal ha logrado acceso a unas declaraciones juradas cuyo contenido nunca debió conocer" y por razón de que, alegadamente, se violentó "el derecho del acusado a confrontarse con los testigos en su contra por cuanto el Ministerio Fiscal, a pesar de que contaba con las aludidas declaraciones juradas, nunca las entregó a la defensa ...".[1] Alegato del apelante, *exhibit* 7, pág. 14.

---

[1] Véase página 4 de la "moción de desestimación", de fecha 19 de diciembre de 1991, que al respecto radicara la defensa ante el tribunal de instancia.

El referido foro, entendiendo que lo acontecido constituía una "irregularidad", contemplada por el Inciso (d) de la Regla 144 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, optó por "disolver" el Jurado y ordenó la celebración de un nuevo juicio. Señalado el mismo, la representación legal del imputado solicitó la desestimación de la causa criminal, ello a la luz de lo dispuesto por la Sec. 11 del Art. II de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, y las disposiciones de la Regla 64(e) de Procedimiento Criminal, 34 L.P.R.A. Ap. II; esto es, de que había estado expuesto en riesgo de ser castigado dos (2) veces por el mismo delito. El foro de instancia denegó dicha solicitud, ordenando la continuación de los procedimientos, los cuales desembocaron, como hemos antes expresado, en veredicto de culpabilidad y la imposición de la sentencia antes mencionada.

En el recurso de apelación que radicara, Hernández Santana le imputa al foro de instancia la supuesta comisión de cinco (5) errores; a saber, haber errado:

... al decretar el traslado del caso a la Sala de Aibonito del ... Tribunal Superior de Puerto Rico.

... al negarse a decretar el archivo y sobreseimiento del primer proceso por los fundamentos aducidos por la defensa en la solicitud que en tal sentido formuló en corte abierta y por escrito el 19 de diciembre de 1991.

... al decretar la disolución del Jurado que entendió en el primer proceso seguido contra el acusado-apelante.

... al declarar "NO HA LUGAR" la Moción de Desestimación del segundo juicio predicada en la doctrina de doble exposición.

... al declarar culpable y convicto al acusado-apelante sin que se estableciera su culpabilidad más allá de duda razonable y fundada. Alegato del apelante, págs. 7–8.

I

Conforme la prueba presentada por el Estado durante el juicio celebrado a nivel de instancia, en la noche del 12 de septiembre de 1990 el perjudicado en el caso, Otto Rafael

Burgos Pabón, decidió ir a la casa donde residían sus cuatro (4) hijos con su ex-esposa, Rosa M. Rodríguez, con el propósito de llevarle a éstos un *videocassette*, el cual les dejó al encontrarlos durmiendo. Al proponerse abandonar la referida casa, se encontró con su ex-esposa, la cual entraba o llegaba a la misma. Esta había sido traída por el apelante Hernández Santana, quien en esos momentos se encontraba todavía sentado en el vehículo en que ambos habían llegado a dicha residencia.

Burgos Pabón se acercó a dicho vehículo con el propósito de dialogar con el apelante Hernández Santana. Este, conforme la versión del perjudicado, *inmediatamente y sin expresar palabra alguna*, le hizo dos (2) disparos, sintiéndose herido Burgos Pabón en el lado izquierdo de su cuerpo. El perjudicado echó a correr, *siguiéndolo el apelante*, quien le hizo tres (3) disparos más. El apelante, aparentemente no teniendo más balas en su revólver, se marchó del lugar, dejando a Burgos Pabón inerte en el pavimento.

El perjudicado perdió uno de sus dedos índices, el cual fue cercenado por uno de los proyectiles. En adición, éste tuvo que ser sometido a una intervención quirúrgica de emergencia, la cual se prolongó por aproximadamente cuatro (4) horas. En la misma, se le extirpó el bazo a Burgos Pabón y se le reparó el diafragma y el colon, teniendo que practicársele una colostomía. Esa, básicamente, fue la prueba de cargo.

Por la defensa, testificaron dos (2) testigos de cargo que fueron renunciados por el Ministerio Fiscal, a saber, la ex-esposa del perjudicado, Rosa M. Rodríguez, y el Policía Ramón Guzmán Esmurría. La testigo Rodríguez declaró que su ex-marido la celaba constantemente del Alguacil Hernández Santana, con quien ella meramente tenía una relación de amistad. Por otro lado, testificó que la noche de los hechos, luego de llegar a su residencia en compañía de Hernández Santana y haber entrado a la misma, escuchó entre cinco (5) y seis (6) detonaciones de arma de fuego y

que, al salir afuera, vio a su ex-marido herido en el pavimento. El Policía Guzmán Esmurría, por su parte, testificó que esa noche llegó al Cuartel de la Policía de Santa Isabel el Alguacil Hernández Santana —pudiendo notar que éste tenía la camisa "estrujá" y el cuello "rojizo"— quien le informó que: encontrándose sentado en su automóvil frente a la residencia de Rosa Rodríguez fue atacado por la espalda por Burgos Pabón, quien lo agarró fuertemente por el cuello y le dijo que lo iba a matar, viéndose él en la necesidad de hacer uso de su arma oficial, haciéndole varios disparos a su "agresor".

## II

En cuanto al primer señalamiento de error, a los efectos de que erró la *Sala de Ponce* del Tribunal Superior al ordenar el traslado de la vista en su fondo para la Sala de Aibonito, somos del criterio que el referido señalamiento es uno inmeritorio.

No hay duda de que la Sec. 11 del Art. II de nuestra Constitución, ante, pág. 308, establece que todo imputado de delito tendrá el "derecho a que su juicio se ventile ante un jurado imparcial *compuesto por doce vecinos del distrito*, quienes podrán rendir un veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve". (Énfasis suplido.) De ordinario, y sobre ello tampoco debe haber duda, ello significa y conlleva que el acusado deberá ser juzgado en el distrito judicial donde se alega por el Estado *que ocurrieron los hechos delictivos*. Véase *Báez Montalvo v. Jefe de Penitenciaría*, 90 D.P.R. 609 (1964).

Dicho derecho, sin embargo, *no* es, ni puede ser, absoluto. *Pueblo v. Santiago Acosta*, 121 D.P.R. 727 (1988). De hecho, la Regla 81 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, reconoce, y establece, unas *excepciones* a ese derecho. Somos del criterio que a los hechos particula-

res del presente caso le son de aplicación las disposiciones del Inciso (a) de la citada Regla 81; esto es, de que procede ordenar el traslado de un caso cuando "por *cualquier* razón, que no sea una de las enumeradas en la Regla 76 *no* pueda obtenerse un juicio justo e imparcial en el distrito donde está pendiente la causa". (Énfasis suplido.) 34 L.P.R.A. Ap. II, R. 81(c).

A estos efectos, debe mantenerse bien presente que no sólo el acusado tiene derecho a un juicio justo e imparcial; *también el Estado tiene ese derecho*. Véanse: *Pueblo v. Sánchez Pérez*, 122 D.P.R. 606 (1988); *Pueblo v. Santiago Acosta*, ante. La situación a la cual nos enfrentamos en *Pueblo v. Sánchez Pérez*, ante, y en *Pueblo v. Rodríguez Zayas*, 137 D.P.R. 792 (1995), es una *distinta* a la del caso de autos. En *Pueblo v. Sánchez Pérez*, ante, el Estado solicitó el traslado del caso por razón de que el acusado era una persona sumamente "conocida" en la comunidad y por razón de que su padre *había sido* alcalde de *uno* de los pueblos que comprendía el distrito judicial de Humacao. El tribunal, al *correctamente* rechazar dicho argumento, certeramente expresó que aceptar dicho fundamento, como base suficiente para decretar un traslado, "significaría [resolver] que ningún pariente de un político, o éste mismo, podría ser juzgado en el foro judicial correspondiente a la demarcación territorial de su municipio o distrito representativo o senatorial".

Por otro lado, en *Pueblo v. Rodríguez Zayas*, ante, el Estado, representado por el Ministerio Público y un Fiscal Especial Independiente (FEI), presentó una moción de traslado fundada en la publicidad excesiva recibida por el caso así como en la familiaridad de los acusados, *un Juez de Distrito y su secretaria*, con el *personal* del tribunal donde se celebraría el juicio. El tribunal, *no obstante reconocer como meritorios dichos fundamentos*, resolvió que el Estado no demostró, *con hechos específicos*, cómo los reportajes en torno al caso, la familiaridad del Juez con el per-

sonal del tribunal y el puesto de Juez del acusado afectarían *la mente del jurado* hasta el punto de empañar su imparcialidad. El Estado se limitó a señalar que el juez acusado *"entra y sale"* por la puerta que conduce a las oficinas de los jueces y sala de jurados. En dicha ocasión consideramos que las *medidas cautelares* adoptadas por el tribunal de instancia eran *suficientes* para garantizar los derechos del acusado y la pureza del proceso.([2]) En consecuencia, confirmamos la resolución emitida por el tribunal de instancia denegando el traslado, destacando el hecho de que el Estado podía reproducir la solicitud de traslado de probarse que realmente no ha podido obtenerse un jurado imparcial.

■ El caso de autos *es distinto*. En el mismo, el acusado, según quedó demostrado, ha tenido, y tenía para la fecha del proceso, *contacto personal y directo* con prácticamente todos y cada uno de los miembros del panel de jurados que tendría que pasar juicio sobre su inocencia o culpabilidad; situación que hacía *necesario* el traslado del

---

([2]) El tribunal de instancia en el referido caso tomó las siguientes medidas cautelares:

"1) El personal de sala —esto es, alguacil, secretaria y taquígrafa— que junto a la juez suscribiente se trasladaron al Centro Judicial de Ponce el 23 de septiembre de 1994 y no son funcionarios del Centro Judicial de Ponce, serán los funcionarios que intervendrán en el caso.

"2) El Tribunal hará un riguroso examen de todos los candidatos a jurado y el fiscal podrá examinar a estos en forma individual.

"3) El Tribunal se reserva la discreción de conceder, de ello ser necesario, perentorias adicionales en la selección del jurado.

"4) Los acusados no podrán tener acceso al pasillo interior del Tribunal y mucho menos donde circulen los candidatos a jurado. Tampoco podrán utilizar las facilidades privadas del Tribunal. Si después de estas y otras medidas cautelares que pudieren tomarse, a juicio del Tribunal no pudiese obtenerse un jurado imparcial, entonces ordenaríamos el traslado del caso.

"5) De constituirse un panel de jurados, se ordenará el secuestro del mismo desde el momento en que preste juramento definitivo.

"6) La custodia del jurado estará a cargo de la Unidad Especial de Alguaciles de la Administración de los Tribunales, la cual está integrada por alguaciles de todos los centros judiciales de Puerto Rico.

"Los alguaciles de Ponce, que formen parte de dicha Unidad no podrán intervenir en la custodia de ese jurado y se ordena [que] sean sustituidos por alguaciles de otros centros judiciales."

caso. *Esto es*, la situación del caso de autos *se asemeja* a la del caso de *Pueblo v. Santiago Acosta*, ante; caso en que confirmamos la determinación del foro de instancia, ordenando el traslado de la vista en su fondo del caso a un distrito judicial distinto al que se había cometido los alegados hechos delictivos, por razón de que el acusado había sido secretario general del tribunal en este último distrito judicial.

En este respecto, entendemos que los hechos, o razones, por las cuales la Sala de Ponce ordenó el traslado del presente caso son unos que *plenamente justificaban* el mismo. Se enfrentaba dicho foro judicial ante la posibilidad real de que el acusado, quien por largos años había laborado como alguacil auxiliar a cargo de los jurados que actuaban en dicha Sala, obtuviera un trato "preferente" de parte del jurado. No debemos olvidar que la justicia debe ser dispensada en un ambiente libre de cualquier sospecha, aun cuando éstas sean infundadas. *Sucn. Ortiz v. Campoamor Redín*, 125 D.P.R. 106 (1990).

Por otro lado tenemos que dicha orden de traslado *no* fue objeto de revisión —vía *certiorari*— por el acusado ante este Tribunal. Debe recordarse el costo enorme —en términos de tiempo y fondos públicos— que conlleva la celebración de un proceso criminal a nivel de instancia. El apelante Hernández Santana pudo, y debió, revisar dicha determinación; la cual pudo, o no, haber sido revocada por este Tribunal en dicho momento. *No* lo hizo; esperó a que el juicio se celebrara y a saber el resultado del mismo. Una vez convicto es que cuestiona la referida determinación. *No* estamos resolviendo que no tiene derecho a plantearlo en apelación. Lo que estamos resolviendo es que *no* estamos en disposición de, *automáticamente y sin más*, avalar dicha "estrategia forense"; una que resulta sumamente perjudicial a una eficiente y sana administración de la justicia en nuestra jurisdicción.

## III

Arguye el apelante Hernández Santana, mediante su segundo señalamiento, que se le violó su derecho al debido proceso de ley —garantizádole a todo imputado de delito por la Sec. 7 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1— por razón de que el Estado tenía en su poder unas declaraciones juradas, incluyendo una del propio apelante, que habían sido tomadas por funcionarios de la Oficina de Administración de los Tribunales, situación que el Ministerio Público no le había informado a la defensa del apelante.

*No* hay duda sobre el hecho de que el Ministerio Fiscal en el presente caso incurrió en *conducta reprobable* al no informar de ese hecho a la defensa y, sobre todo, al no haberle brindado copia de las mismas a la defensa durante los procedimientos anteriores a la vista en su fondo del caso. Constituye norma trillada de que el Estado viene en la obligación de suplir a la defensa copia de toda declaración jurada, que "tenga en su poder", de todo testigo que haya declarado en las vistas anteriores al juicio. *Pueblo v. Ribas*, 83 D.P.R. 386 (1961); *Pueblo v. Soto García*, 119 D.P.R. 44 (1987).

Ahora bien, la defensa *no* señala *ni* expresa el *daño específico* que, debido a esa situación, sufrió el apelante en el presente caso. Se limita meramente a expresar que el Estado actuó impropiamente y que lo que procedía era ordenar el archivo y sobreseimiento, con perjuicio, del proceso criminal al amparo de las disposiciones de la Regla 247 de Procedimiento Criminal, ante. *No* estamos de acuerdo.

La conducta del Ministerio Fiscal, aun cuando *altamente* censurable, *no* debe tener, en nuestra opinión, el alcance o la consecuencia que pretende la defensa del apelante; esto es, la misma no debe acarrear la desestimación,

*con perjuicio*, del pliego acusatorio. En el presente caso ni siquiera se trata de la situación, *grave y perjudicial*, en que el Ministerio Fiscal "esconde" o no descubre prueba que demuestra, o tiende a demostrar, la *inocencia* del acusado, esto es, prueba exculpatoria; situación en relación con la cual la regla mayoritaria —tanto en la jurisdicción federal como en la estatal norteamericana— es a los efectos de que lo que procede es decretar la revocación de la convicción y la celebración de un nuevo juicio. *United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976); *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Turner*, 490 F. Supp. 583 (1979); *State v. Florez*, 134 N.J. 570, 636 A.2d 1040 (1994); *Hall v. State*, 625 So. 2d 1165 (1993); *Wilson v. State*, 372 A.2d 198 (1977). En particular, y en relación con el punto específico ante nuestra consideración, véanse: *Pueblo v. Delgado López*, 106 D.P.R. 441 (1977); *Pueblo v. Ribas*, ante.

▮ Aquí, llana y sencillamente, se trata de unas declaraciones juradas que debieron ser entregadas a la defensa. Esta, sin embargo, no nos señala, ni demuestra, el *perjuicio específico* sufrido, debido a ello, por el apelante. Meramente se limita, repetimos, a señalar que dicha acción privó al apelante, *en términos generales*, de su derecho a confrontarse con los testigos de cargo. Somos del criterio que el foro de instancia actuó con gran juicio, y mesura, en el presente caso. En *primer* lugar, celebró una vista con el propósito de determinar la magnitud del daño sufrido por la defensa al ésta no contar con las referidas declaraciones juradas durante el proceso que se estaba celebrando. En *segundo* término, y ante la ausencia de señalamiento sobre *daño específico* de parte de la defensa —daño que en casos extremos, en nuestra jurisdicción y a solicitud del Estado o, motu proprio, por el tribunal,[3] puede llevar al foro de

---

[3] Véase *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299 (1991).

instancia a ordenar el archivo y sobreseimiento de los cargos, "en pro de la justicia", al amparo de las disposiciones de la Regla 247(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II— determinó que lo procedente en derecho era decretar la disolución del jurado al amparo de las disposiciones del Inciso (d) de la Regla 144 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; esto es, cuando "se hubiere cometido algún error, *o se hubiere incurrido en alguna irregularidad* durante el proceso que, a juicio del tribunal, le impidiere al jurado rendir un veredicto justo e imparcial". Véanse: *Pueblo v. Suárez Fernández*, 116 D.P.R. 842 (1986); *Pueblo v. Robles González*, 125 D.P.R. 750 (1990). Ello, con el obvio propósito de garantizarle plenamente al acusado el derecho constitucional a confrontarse con los testigos en su contra y poder contrainterrogarlos adecuadamente; esto es, garantizarle al acusado un juicio justo e imparcial.

## IV

Lo antes expuesto dispone, realmente, de los señalamientos tercero y cuarto del apelante. Habiendo determinado que *actuó correctamente* el tribunal de instancia *al negarse* a ordenar el archivo y sobreseimiento, con perjuicio, de la acusación y *al decretar* la disolución del jurado *y ordenar* un nuevo juicio, se cae, por su propio peso, el señalamiento de que se le violó al apelante el derecho que le garantiza la Sec. 11 del Art. II de nuestra Constitución, *supra*, a los efectos de que nadie "será puesto en riesgo de ser castigado dos veces por el mismo delito".

El apelante se *contradice* al argumentar su posición en este respecto. Por un lado, expresa que la conducta observada por el Ministerio Fiscal fue tan grave que la misma ameritaba que el foro de instancia decretara el archivo, *con* perjuicio, de la acusación contra él radicada. Sin embargo, y a renglón seguido, sostiene que dicha conducta *no* ameritaba que se decretara la disolución del Jurado y se orde-

nara la celebración de un nuevo juicio. *¿En qué quedamos?* Lo que es suficiente para "lo más", obviamente es suficiente para "lo menos".

Habiendo actuado, *repetimos*, correctamente el foro de instancia al disolver el Jurado, *no* procede planteamiento alguno por doble exposición al amparo de lo dispuesto por la citada Sec. 11 del Art. II de nuestra Constitución. *Pueblo v. Arteaga Torres*, 93 D.P.R. 148 (1966).

## V

Igualmente improcedente resulta ser el quinto señalamiento de error. La prueba de cargo de ser creída por el Jurado —*como lo fue*— es suficiente en derecho para sostener la convicción decretada a nivel de instancia por el juzgador de los hechos. La misma es una "satisfactoria" en derecho. *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986).

El Jurado, obviamente, *no* creyó la teoría —y prueba— sobre defensa propia que prestara el apelante. Coincidimos plenamente con la determinación del Jurado a esos efectos. Dicha prueba no demostró que el apelante hubiera estado en peligro inminente de perder la vida o de sufrir grave daño corporal. Por otro lado, debe recordarse que, en defensa propia, *no* se puede causar más daño que el necesario para defender nuestra vida. *Pueblo v. González Román*, 129 D.P.R. 933 (1992); *Pueblo v. Ríos Rivera*, 88 D.P.R. 165 (1963). A esos efectos, debe mantenerse presente que la prueba demostró, más allá de duda razonable, que el apelante *descargó* totalmente su revólver; esto es, *agotó* todas las balas con que contaba su revólver, en ese momento; estando, al así hacerlo, completamente indefenso la víctima objeto de su agresión.

*Se dictará sentencia de conformidad.*

Los Jueces Asociados Señores Hernández Denton y Fuster Berlingeri concurrieron con el resultado sin opinión escrita. El Juez Asociado Señor Alonso Alonso no intervino.